Haight, J.
This action was brought to recover damages for waste committed upon real estate by the cutting of timber thereon, and to restrain such waste. The defense was that the defendant had purchased the lands upon which the timber was cut, and had entered into the possession under a written contract; that under the agreement as made between the parties he had the right to cut the timber that' he did cut, and asked to have the written agreement reformed so as to give him that right. The referee found as facts that in the month of January, 1886, the "defendant and Jasper Stryker, the husband of the plaintiff, entered into a verbal contract, whereby the said Jas *514 per Stryker agreed to sell and convey to the said- defendant 65 acres of land, which comprised the east half of a tract of land on lot No. 52 in the, town of South Valley, county aforesaid, the entire tract of which is owned by the said Jasper Stryker; that by the terms of said verbal agreement the defendant was to pay the said plaintiff the sum of $12 per acre therefor, in annual payments of $100, with interest on the principal sum from year to year after the first year; that said plaintiff reserved from the operation of said agreement all of the pine, chestnut, cucumber, and oak on said lot of sufficient size for saw timber; that by the terms of said agreement the defendant was to have immediate possession of said lot, and was to be permitted to cut the hemlock and other timber growing thereon, not specifically reserved by the terms aforesaid, and said agreement was thereafter to be reduced to writing when the boundaries were definitely ascertained; that under and in pursuance of such agreement the defendant went into possession of said land, cutting the timber thereon, clearing up about two acres thereof, and causing a shingle-mill to be erected thereon for the purpose of sawing into shingles the hemlock timber on said lot, and building a small dwelling-house thereon; that defendant, in the subsequent purchase of said mill and in making the improvements above enumerated, expended a large sum of money, to-wit, about $800; that defendant has continued uninterruptedly in the possession of such lands ever since he went into the occupancy as aforesaid; that in the month of June, 1886, the said Jasper Stryker sold and conveyed to his wife, the plaintiff, by a deed of conveyance, the entire tract of 130 acres above mentioned; that at the time of such conveyance the defendant was in actual possession of the 65 acres purchased by him of said Jasper Stryker, and that she, the said plaintiff, knew of the making of such oral agreement, and defendant’s occupancy thereunder; that afterwards, and on the 15th day of August, 1887, the parties hereunto entered into the written agreement, a copy of which is annexed and forms a part of the complaint in this action; that it was the intention and design of the parties hereto by making such an agreement to embody therein the oral agreement made in January, 1886, by and between the said Jasper Stryker and defendant herein; that through the fault of the scrivener who prepared said written contract, or from a misconception of the language used therein, the said written agreement failed to express and contain the agreement of the parties thereto, in that it omitted to state that the defendant was to retain and continue in possession of the lands therein described, and was to have the privilege of cutting and removing the timber thereon, not specifically reserved by the terms thereof. Exceptions were taken by the plaintiff to such findings.
The real question to be determined upon this appeal is whether the evidence sustains the finding of the referee to the effect that it was the intention and design of the parties in making the written agreement to embody therein the oral agreement made in January, 1886, and that through the fault of the scrivener who prepared the written contract, or from a misconception of the language used, the written agreement failed to express and contain the full agreement of the parties. The rule as stated in 3 Pom. Eq. Jur. § 1376, is that “equity has jurisdiction to reform written instruments in but two well-defined cases: First, where there is a mutual mistake; that is, where there has been a meeting of minds,—an agreement actually entered into,—but the contract, deed, settlement, or other instrument in its written form does not express what was really intended by the parties thereto; and, second, where there has been a mistake of one party, accompanied by fraud or other inequitable conduct of the remaining parties. In such cases the instrument may be made to conform to the agreement or transaction entered into according to the intention of the parties.” This rule is sustained by numerous authorities, of which it will only be necessary to cite Welles v. Yates, 44 N. Y. 525; Story v. Conger, 36 N. Y. 673; Institution v. Burdick, 87 N. Y. 40. Parol evidence *515 is competent to show a mutual mistake, but to justify a reformation the evidence should be clear, convincing, and satisfy the court. Ford v. Joyce, 78 N. Y. 618. In the case under consideration the evidence was conflicting,—that of the plaintiff, her husband, and son contradicting the defendant as to many of the main facts testified to by him; still the defendant is amply corroborated by several disinterested witnesses, and he appears to have convinced the referee that the facts were as he testified. It is undisputed that in January, 1886, Jasper Stryker owned the land in question, and that thereafter, and in June, 1886, he conveyed to his wife. It is undisputed that prior to the conveyance to the wife Jasper Stryker had one or more conversations with the ■defendant about selling him the lot in question, and that the price was agreed upon; that thereupon the defendant entered upon the premises, and cut a number of hemlock trees, and peeled the bark therefrom, under an arrangement that he should pay one dollar per cord for the bark so peeled, when the same was sold, and the money collected thereon.. It is contended on the part •of the defendant that the one dollar per cord which he agreed to pay on peeling the bark was to be applied and credited upon the contract for the purchase of the land; that one Grant was in possession of a parcel of such land, and that Jasper Stryker was endeavoring to get possession thereof before giving a written contract for the sale to defendant; but that, pending the removal of Grant from the premises, Jasper Stryker gave him possession, and a permit to cut the timber.
It is claimed on behalf of the plaintiff that while the terms of the agreement were talked over, it was not consummated at that time, for the reason that Grant was still in possession. It further appears that subsequently the land was conveyed by Jasper Stryker to his wife, the plaintiff, and that Grant’s ■claim was disposed of, and thereupon the written contract in question was •entered into between the plaintiff and defendant. It does not appear that there was any talk between the parties at the time of entering into the written agreement in reference to the terms and conditions of the sale. The transaction was largely conducted by the plaintiff’s son, who drew the contract. Upon these facts, which we understand to be undisputed, it becomes important to irfquire as to what had actually taken place between the plaintiff’s husband and the defendant prior to entering into the written agreement, for the referee has found—and we think, properly—that it was the intention of the parties to the written agreement to embrace in the writing and carry •out the terms of the agreement as it had been previously talked over and understood. The defendant has testified that in the conversations that he had with Jasper Stryker about the purchase he stated that he could do nothing unless he could have the hemlock timber to work upon, as he should require the timber in order to make his payments upon the contract; that he was told that he could cut any of the timber except the pine, chestnut, cucumber, and oak of sufficient size for saw timber; that at a subsequent conversation to that where the terms of the contract were agreed upon, he told Stryker that he wanted to commence peeling bark, and that be was told by Stryker that he •ought to pay him on his contract at the rate of one dollar per cord for all bark peeled, and that he agreed to do so as soon as he could sell the same and get the money thereon.
The defendant is corroborated by Bragg, Colburn, Grant, and several other witnesses, and while there is a sharp conflict over the question as to whether he was to be permitted to cut the timber upon the premises not reserved, we -are inclined to the opinion that the findings of the referee are justified by the ■evidence. In the first place, the defendant was a poor man, engaged in the lumber business; had been cutting and drawing timber to the mill for the plaintiff’s husband. The complaint alleges that he was insolvent. The premises purchased were entirely unimproved, being entirely covered with timber. It was known that nothing could be produced thereon until the timber was *516 removed, and the premises cleared. Sixty cords of hemlock bark had been cut and peeled before the written agreement was entered into. A shingle-mill had been erected upon the premises, and the defendant was in possession at the time the written agreement was made. 3?he plaintiff must therefore have understood that the defendant expected to cut and work up the timber, and that he had no other means by which he could make his payments upon the contract, only by so doing. These circumstances appear to us to corroborate the defendant’s testimony to the effect that he told the plaintiff’s husband and son that he could do nothing about making the purchase unless he could have the hemlock timber, for he should require it to make the payments upon his contracts. We are therefore of the opinion that the judgment should be affirmed, with costs. So ordered. All concur.