### HALLIDAY v. WHITE.

(Supreme Court, General Term, Fifth Department.   January 18, 1893.)

1. REFORMATION OF CONTRACTS—MUTUAL MISTAKE—EVIDENCE.
    Defendant sold the standing timber on 100 acres of land to plaintiff by a contract. plain, easily understood, and with no ambiguity in the description of the land, and thereafter entered on the land, and cut and carried away a number of trees. *Held*, in an action for the value of the trees carried away, where defendant claimed that more land was included in the contract than was intended, and that by the real agreement between the parties the trees cut were not within the contract, that the presumption is in favor of the correctness of the contract, to overcome which defendant must establish her contention by satisfactory evidence, not only that there was a mistake on her part, but that the mistake was mutual.

2. SAME—PARTIES.
    Where plaintiff's brother, by an arrangement with plaintiff, was to have an interest in any profits which might accrue out of the purchase and sale of the timber, but plaintiff was the owner thereof, plaintiff was the only one entitled to maintain the action.

Appeal from judgment on report of referee.

Action by Alonzo Halliday against Hannah White. From a judg-ment in favor of plaintiff, defendant appeals. Affirmed.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

A. C. Wade, for appellant.

Bootey, Fowler & Weeks, for respondent.

LEWIS, J. The defendant, by a written agreement bearing date October 13, 1879, sold to the plaintiff all the standing timber on 100 acres of land in the town of South Valley, Cattaraugus county, belong-ing to the defendant. The premises were described in the contract as bounded west by what is known as the "Jones Lot," south by land owned by one Butts, on the north by land owned by one Burch, and extending east equal widths far enough to include 100 acres. After the execution and delivery of the contract, the defendant entered upon the premises described in the contract, and cut and carried away from the easterly portion thereof 139 trees, and this action was brought against the de-fendant for the conversion of these trees. The referee found for the plaintiff, for the amount of the value of the trees, $234.56. The mak-ing of the contract was admitted in the pleadings. It is conceded that the trees were upon the land included within the boundaries of the lot as described in the contract, but it is the contention of the defendant that, by the mutual mistake of the parties, the contract did not express the real agreement; that more land was included within the boundaries as described in the contract than was intended to be by the parties thereto. The defendant claims that the real agreement and understand-ing of the parties was that the trees that were on the land south of the Burch lot were to be sold, and that this sale did not include any of the trees upon the land easterly of the Burch lot, and that, by the mutual mistake of the parties, the land was incorrectly described in the con-tract; and the defendant asked in her answer to have the contract re-formed so that it would express the real agreement made by the parties. The trees taken away by the defendant concededly came from land lying east of Burch's east line, extended southerly. The negotiations leading up to the making of the contract were mainly conducted on the part of the plaintiff by his brother, Samuel Halliday. The evidence on the part of the defendant tends to show, and it may be assumed that it fairly establishes, that defendant supposed, when executing the contract, that the timber on the land directly south of the Burch lot, and no more, was being sold. She understood and believed that 100 acres or more of her land lay south of Burch's land. Her husband had informed her that there were 112 acres in that piece, and, when she consented to the description as written in the contract, she did not suppose it would include any of the land lying east of the Burch line. She understood, however, that she was selling, and that the plaintiff expected to obtain, the timber on 100 acres of land. She was present when the contract was written, and testified that she heard it read; that she heard the fol-lowing clause read: "The said first party sells, transfers, and conveys

unto the said second party the timber on one hundred acres of land." She says that she knew the words "one hundred acres" were used three times in the contract, and that she heard read and understood that portion of the contract which spoke of the land extending east far enough to include 100 acres when she signed it. She met the plaintiff at the office of the attorney. When the contract was drawn, she testified that there was a conversation in the presence of herself and plaintiff, and that, so far as she knew, all that was said in plaintiff's presence was that he was purchasing all the timber on 100 acres of land. The evidence tends to show that the plaintiff's brother, when negotiating for the purchase of the timber, understood from conversations with the defendant and others that there were 100 acres of land lying south of Burch's lot, but the evidence does not show that either he or the plaintiff had any knowledge how far east the 100 acres would in fact extend. Both the plaintiff and his brother, Samuel, testified that there was no understanding or agreement fixing the location of the east line of the lot at any other place than that mentioned in the contract; that it was the understanding and agreement that the plaintiff was to have all the timber on 100 acres; and that the contract correctly expressed their understanding of what the agreement in fact was. They deny that there was any mistake in the contract on their part.

The contract is plain, and easy to be understood. There is no ambiguity in the description of the land. It transfers the timber on 100 acres. The land is bounded upon the north and west and south by the lands of other owners, and extends far enough east to include 100 acres. Defendant's farm contained over 200 acres, and extended further east beyond the 100 acres sold to the plaintiff. The presumption is that the contract expresses the agreement of the parties. The burden to show that it does not is upon the defendant. To succeed, she must establish her contention by plain, convincing, and satisfactory evidence, not only that there was a mistake upon her part, but that the mistake was mutual. Devereux v. Sun Fire Office of London, (Sup.) 4 N. Y. Supp. 655; Stryker v. Schuyler, (Sup.) 3 N. Y. Supp. 513; Howland v. Blake, 97 U. S. 626.

Plaintiff's brother, Samuel, by an arrangement with the plaintiff, was to have an interest in any profits which might accrue out of the purchase and sale of the timber, but the plaintiff was the owner of the timber, and was the only one entitled to maintain the action. The defendant failed to make a case for a reformation of the contract. We find nothing in the defendant's exceptions justifying a reversal of the judgment. The judgment appealed from should be affirmed, with costs. All concur.