EMMA FEHLBERG *et al. vs.* GARRETT COSINE *et als.*

EMMA FEHLBERG *et al. vs.* WILLIAM OHLY & SALMON W. HOYT *et. als.*

A written contract can be reformed by a court of equity only on proof of a mutual mistake of the parties. A mistake made by only one party gives no reason for relief.

A proven material mistake by one party may enable a court of equity to rescind the contract; as when the parties can be put *in statu quo,* or when the mistake was caused by the falsehood or concealment or fraud of the other party.

Hence, when a bill in equity was filed to reform a contract, and it appeared that the contract was just what the respondent intended, that the contract had been in part performed, and that the bill contained no charge of fraud:

*Held,* that the bill must be dismissed.

BILLS IN EQUITY to reform a written contract and to enjoin actions at law.

*February* 18, 1888. STINESS, J. In order to entitle a party to a decree to reform a written instrument, it must appear that there has been a mutual mistake in its execution. *Bradford* v. *Romney,* 30 Beav. 431 ; *Metropolitan Counties Society* v. *Brown,*

26 Beav. 454; *Nevius* v. *Dunlap*, 33 N. Y. 676; *Lyman* v. *United Insurance Co.* 17 Johns. Rep. 373; *Ludington* v. *Ford*, 33 Mich. 123; *Paulison* v. *Van Iderstine*, 28 N. J. Eq. 306.

The rule and the reasons upon which it rests are clearly stated by Ames, C. J., in *Diman* v. *Providence, Warren & Bristol R. R. Co.* 5 R. I. 130 : " A court of equity has no power to alter or reform an agreement made between parties, since this would be in truth a power to contract for them ; but merely to correct the writing executed as evidence of the agreement so as to make it express what the parties actually agreed to. It follows that the mistake which it may correct in such a writing must be, as it is usually expressed, the mistake of *both* parties to it ; that is, such a mistake in the draughting of the writing as makes it convey the intent or meaning of neither party to the contract. If the court were to reform the writing to make it accord with the intent of one party only to the agreement, who averred and proved that he signed it as it was written by mistake, when it exactly expressed the agreement as understood by the other party, the writing when so altered would be just as far from expressing the agreement of the parties as it was before; and the court would have been engaged in the singular office, for a court of equity, of doing right to one party at the expense of a precisely equal wrong to the other."

This case recognizes another rule of equity, that where there has been a material mistake upon one side the court may rescind and cancel the agreement, where it can do so without injustice to the other party. There are two principal classes of cases in which this power of the court is exercised. One includes cases of executory contracts and the like, where the parties can be put *in statu quo*. In these cases the parties have not, in reality, agreed ; their minds have not met; and if one, without fault on his part, has bound himself to something materially different from what he supposed it to be, which can be annulled without loss or injustice to the other side, it is deemed to be inequitable to enforce it. *Lawrence* v. *Staigg*, 8 R. I. 256; 10 R. I. 581. *Harris* v. *Pepperell*, L. R. 5 Eq. 1 ; *Garrard* v. *Frankel*, 30 Beav. 445 ; *Wright* v. *Goff*, 22 Beav. 207 ; *Spurr* v. *Benedict*, 99 Mass. 463 ; *Glass* v. *Hulbert*, 102 Mass. 24.

Another class includes cases where the mistake of the party complaining has arisen from the concealment or withholding of facts which the other party was bound to disclose, thus amounting to fraud, actual or constructive, which is one of the fundamental elements of jurisdiction in equity. This case does not come within any of these grounds of relief. This written instrument cannot be reformed, because there was no mutual mistake. The complainant Fehlberg formerly manufactured oleomargarine in New Haven, but his establishment was seized and closed upon a suit for the alleged infringement of a patent held by a rival manufacturer. He was then informed by the defendants, Hoyt and Ohly, that they had the only valid patent for the manufacture of oleomargarine, and that they should stop everybody who did not have their license. Negotiations followed, which resulted in the execution of the agreement or license set forth in the bill. The defendants say the contract was written just as it was agreed upon, and just as they understood and intended it should be. The only evidence of a mutual mistake is the testimony of the complainants that, unable to comprehend the document from their imperfect knowledge of the English language, they relied on the · defendants, especially on Ohly, who spoke German, and were told it gave them the sole and exclusive right to make and sell oleomargarine in Rhode Island. The complainants also state that it was agreed that they were to pay nothing under the license until other manufacturers here had been stopped. But there could have been no mistake about these things on the part of the defendants. They had bought the right to issue licenses under the Cosine patent ; they were familiar with the form and effect of licenses, and knew perfectly well the terms of the paper they gave to the complainants. If they stated what it is said they did, it was not a mistake but a lie, a fraud. There is no ground for reforming the instrument, for there was no mutual mistake. It might be annulled for fraud, but we do not understand that the bill charges fraud. Following a too common practice, the bill goes on with a sort of affidavit or narrative of the transaction, not setting out facts so much as the evidence of facts ; as if stating the evidence by which a case is to be maintained is the same thing as stating the case itself. The difficulty with such a practice is, that the

court is frequently at a loss to know what a complainant means to state or charge, and upon what ground he seeks relief. As there is no charge of fraud in this case, as we construe the bill, we do not pass upon that question, and, of course, cannot set the instrument aside on that ground.

Neither is the case one where the instrument can be annulled for the material mistake of one party. The contract has been partially executed. For several years the complainants have been manufacturing oleomargarine, if not according to the patent, at least under the license, which they do not offer to give up or seek to have annulled. The parties cannot be placed *in statu quo* without recompense to the defendants for the time the license has run. But this involves the whole question between the parties, viz., what their agreement was, and whether anything was to be paid until after other manufacturers had been stopped. The contract says nothing about this, but the complainants say this was a part of the agreement. If so, we do not think it was an innocent omission, nor a misapprehension as to the effect of the paper, but simple deceit. If there was fraud, the contract cannot be enforced; if there was no fraud, and there is no proof of mutual mistake, the complainants must abide by a contract improvidently made. The proper form for trying the question of fraud, since it is not charged here, is in the actions at law brought to recover the money due under the contract, and for that reason the prosecution of the suits ought not to be enjoined.

*Bills dismissed with costs, but without prejudice to the suits at law.*

*Benjamin F. Thurston & Frederick Rueckert,* for complainants.

*Edgar J. Phillips, Herbert B. Wood & William Fitch,* for respondents.