LITTLE *et al. v.* WEBSTER *et al.*

*(Supreme Court, General Term, First Department.* May 18, 1888.)

1. EQUITY—REFORMATION OF CONTRACTS—SUFFICIENCY OF EVIDENCE.
   Where the evidence as to whether a written contract, by mistake, omitted a clause agreed upon by the parties, is conflicting, the witnesses seem to be equally reliable, and both sides are supported by circumstances attending the negotiations for the contract, and the performance of work under it, the proof is not of that clear and conclusive character required to justify the court in reforming the contract.[1]

2. CONTRACTS—CONSTRUCTION—MUTUAL OBLIGATIONS.
   A contract recited that defendants "are about to publish a book entitled 'Personal Memoir of U. S. Grant,' in two volumes;" that plaintiffs "have contracted with" defendants "to set up, electrotype, and print said two volumes, upon the terms and conditions hereinafter stated;" plaintiffs to print 50,000 copies "thereof," and as many more as might be ordered by defendants, carrying on the printing of the first edition simultaneously with the making of the plates. "The said parties of the second part [plaintiffs] further agree that they will print all subsequent and further editions of said book in the manner and on the terms specified, and furnish to the parties of the first part copies of said book at the rate of 50,000 per month if so requested." *Held,* that this contract not only bound plaintiffs to do the printing, etc., but also and equally bound defendants to furnish plaintiffs the matter for publishing both volumes; the word "book," as used in the contract, clearly meaning the complete work.

3. PRACTICE IN CIVIL CASES—MOTION TO DISMISS—OBJECTION TO TRIAL TO JURY.
   A motion to dismiss on the grounds that plaintiffs have shown no equities; that, under the contract as made, defendants have paid plaintiffs all they were entitled to; that plaintiffs have not shown that the real contract was otherwise than as it was drawn, or that there was mutual mistake or frauds requiring its reformation, upon which their cause of action depended,—is too broad to raise the objection that the action should be tried to a jury, and not to the court.

Appeal from special term, New York county; IRVING G. VANN, Justice.

This was an action brought by Joseph J Little and William J. Demorest against Charles L. Webster and Samuel L. Clemens, praying for the reformation of a written contract entered into between plaintiffs and defendants, and for relief under it as reformed. Trial to the court, and judgment reforming the contract, and granting the relief as prayed. Defendants appeal.

Argued before VAN BRUNT, P J., and BARTLETT and MACOMBER, JJ.

*Alexander & Green,* (*Jacob F. Miller,* of counsel,) for appellants. *James R. Marcin,* for respondents.

VAN BRUNT, P. J. If it is necessary, in order to support the recovery in this action, that the contract which forms the basis of the action should be reformed, as prayed for in the complaint, and as found in the findings of the learned justice who tried the cause, the judgment appealed from cannot be sustained. In order to justify the court in reforming the contract, the proof of the mistake, as has been said by Chief Justice SPENCER, must be clear and decisive; for a written contract executed by the one party, and accepted by the other, affords very high evidence that it speaks the agreement and intention of both parties. Parol communications leading to a contract, consisting of propositions and answers, must necessarily be vague and uncertain, and we are to look for the real contract in the solemn and consummated act of the parties,—the final and written agreement between them." The rule seems to be well established that, in order to justify the court in inserting into a written contract that which has been omitted by the parties, the evidence should be strong, conclusive, and in some cases it has been held should be beyond all reasonable doubt. But, perhaps, this expression is too strong. There must be, at least, very conclusive evidence that by mistake the contract does not represent the intention of the parties, or that by mistake an omission has taken place, or clauses have been inserted which were not intended, or there must be proof of fraud having been perpetrated by one party against the other,

---

[1] See note at end of case.

who seeks the reformation. In the case at bar the proof by no means comes up to this rule. The evidence is conflicting; the witnesses seem to be equally reliable; both are supported by certain circumstances attending the negotiations for the contract, and the performance of the work thereunder; and, from the opinion of the learned justice, it appears that he recognized this conflict of evidence, and that, in his opinion, one or other of the parties must have knowingly testified untruly. There is not that preponderance of evidence— that proof, clear and decisive—which would justify the court in inserting a paragraph of the nature such as has been inserted by the court, by its decision in this action, into the contract sought to be reformed.

The question, then, arises as to whether a recovery can be sustained upon the contract without the reformation. The claim upon the part of the defendants seems to be that they were too sharp for the plaintiffs; that they procured a contract to be drawn by their lawyers by which the plaintiffs were bound, but the defendants were not; and it is because of that claim, upon the part of the defendants, that the plaintiffs have sought to have this contract reformed. An examination of the contract, however, seems to lead to the inevitable conclusion that no reformation was needed, and that the contract, with the reformatory clause and without it, is to be interpreted in precisely the same way; and that although the defendants intended to have a contract drawn which should not bind them, but which they should make the plaintiffs believe did bind them, and which would bind the plaintiffs, the contract as executed was a perfect contract, binding both parties; and the defendants seem to be entirely mistaken in assuming that they had been sufficiently acute to bind the plaintiffs, and not to bind themselves. A very brief consideration of the phraseology of this contract appears to establish this proposition. The contract purports to be a memorandum of agreement made the 4th day of April, 1885, between the defendants and the plaintiffs. It recites that the parties of the first part, namely, the defendants, are about to publish a book entitled "Personal Memoir of U S. Grant," in two volumes, octavo form, of about 500 pages each; and that the said parties of the first part (the defendants) have contracted with the parties of the second part (the plaintiffs) to set up, electrotype, and print said two volumes upon the terms and conditions thereinafter stated. This recital is an assertion that they (Webster & Co.) had made a contract with Little & Co. that they should print the two volumes upon the terms and conditions subsequently stated in the agreement. This was clearly an admission by Webster & Co. that they had made this contract with Little & Co., and that Little & Co. were to do the printing, and that they were to give the printing to them for the purpose of being done. This language admits of no other construction. Webster & Co. were to be the publishers, and Little & Co. were to print these two volumes; and, if they were to print these two volumes, then, necessarily, Webster & Co. were bound to give them the matter for publication. It cannot be said that Little & Co. had contracted to do whatever printing Webster & Co. gave them, because the statement of the recital is that Webster & Co, had contracted with Little & Co. to print these two volumes, which necessarily means that Webster & Co., the publishers, were to furnish the matter to Little & Co. for the purpose of printing; the contract, therefore, being that Little & Co. were to do the printing of these two volumes, and Webster & Co. to furnish the matter. The contract in question then proceeds with the specifications as to how the work is to be done, and when it is to be done, and what payments are to be made, etc.; and, by the provisions of these specifications, the plaintiffs are to print at least 50,000 copies. Does it say of the first volume? Not at all. But it says they are to print at least 50,000 copies thereof, meaning the said book; and there is nothing to indicate that this limitation was to apply either to the first or second volume; and upon the construction of the contract, it being a specification for the publication of the two volumes, the necessary meaning to be

given to that word "book" is that they were to print 50,000 copies of the work, and that was evidently the intention of the parties at the time these specifications were entered into between them. The plaintiffs, then, were to print at least 50,000 copies of the work, and as many more as might be ordered by the parties of the first part, carrying on the printing of the first edition simultaneously with the making of the plates. The first edition of what? It must necessarily mean the first edition of the work which the plaintiffs had contracted to print, and of which contract this part of the agreement was simply the specifications. The specifications go on, and say, further: "And the said parties of the second part further agree that they will print all subsequent and further editions of said book in the manner and on the terms specified, and furnish to the parties of the first part copies of said book at the rate of 50,000 per month, if so requested by the parties of the first part." Here it is clear that the word "book" is used in the same meaning as the word "work;" and it is to be borne in mind that in the recital of this agreement the word "book" has been defined, because the recital states that the parties of the first part are about to publish a book in two volumes, octavo form; and the use of that word in that recital characterizes its use throughout the whole agreement. There are no other clauses in this contract which in any way militate against the construction which is herein placed upon it. The contract seems to be plain and explicit that the plaintiffs are to print at least 50,-000 copies of the book, namely, the two volumes; that they are to be furnished by the defendants with the matter for the printing of those two volumes; and that they are to print as many as may be ordered by the parties of the first part, in addition to the 50,000 copies. And the next paragraph of the contract shows how these additional orders must be furnished by the plaintiffs; and in that they agree that they will print all subsequent and further editions of said book, namely, after the first 50,000, and furnish to the parties of the first part copies of said book at the rate of 50,000 per month, if so requested by the parties of the first part. This seems to have been the contract between the parties: The plaintiffs obligated themselves to print and deliver 50,000 per month if called upon so to do, and they were to be guarantied the printing 50,000 copies, at least, of each volume; and that when they furnished these books at the rate of 50,000 per month, under the orders of the defendants, their contract was complete. The clause in the preceding paragraph, "and as many more as may be ordered by the parties of the first part," is evidently qualified by the subsequent provision in regard to the 50,000 per month, although it may be said that that applied to subsequent editions. But it appears distinctly, upon a reading of the whole contract, that these subsequent editions were intended to refer to those ordered after the first 50,000. This seems to interpret the contract precisely in accordance with the intention of the parties. There does not seem to be any ambiguity in the contract in this respect; and, if this is the true construction to be placed upon it, then it bears the same interpretation it would were it reformed as was attempted to be done by the court; and the defendants have violated it, and the plaintiffs are entitled to recover the damages which the court has found. There was no refusal upon the part of the plaintiffs to perform the work specified in this contract as fast as the contract called upon them to do it, and therefore the defendants cannot, upon that ground, seek exoneration for their breach of the agreement.

It may be said that the conclusion at which we have arrived, makes the action simply one at law to recover damages for the violation of a contract, and that it should have been tried before the court and a jury, and not before the court. If the defendants, in their motion to dismiss, or at any stage of the trial, had raised this question by a proper motion and exception, the objection would undoubtedly have been well taken. But they have nowhere raised any such proposition. The grounds upon which the defendants moved to

NEW YORK SUPPLEMENT.

dismiss were that no equities were shown; that, under the contract as made, the defendants had paid the plaintiffs for all they had ordered them to do; that the plaintiffs had not shown that the contract was any other than as specified; and that it was necessary, in order to reform the contract, to show that there was a mutual mistake or fraud; and, as they had not shown either, no cause of action was proved. These objections were too broad to raise the question suggested. They were made upon the motion to dismiss the complaint; and even if the plaintiffs were not entitled to a decree reforming the contract, if the facts alleged on the proof admitted showed that they were entitled to legal relief, the complaint could not have been dismissed; but that part asking for equitable relief should have been denied, and the plaintiffs sent for their legal relief to a trial before a court and jury. *Sternberger* v. *McGovern*, 56 N. Y. 12.

The necessary conclusion is that that part of the judgment which attempts to reform the contract must be reversed, and the remainder of the judgment affirmed, without costs to either party.

BARTLETT and MACOMBER, JJ., concurring.

NOTE.

EQUITY—REFORMATION ON GROUND OF MISTAKE. The provisions of a written instrument will not be disturbed for the purpose of reforming it, unless it be shown—

(1) That the instrument does not set forth the true intent of the parties. Fritzler v. Robinson, (Iowa,) 31 N. W. Rep. 61; Water-Power Co. v. Merriman, (Minn.) 27 N. W. Rep. 199; James v. Cutler, (Wis.) 10 N. W. Rep. 147.

(2) That the failure to make the instrument express such intent arose from oversight or mistake in draughting it. Fritzler v. Robinson, *supra;* Dod v. Paul, (N. J.) 11 Atl. Rep. 817.

(3) That such mistake was mutual. Henderson v. Stokes, (N. J.) 8 Atl. Rep. 718; Spare v. Insurance Co., 19 Fed. Rep. 14; Wachendorf v. Lancaster, (Iowa,) 14 N. W. Rep. 316, 16 N. W. Rep. 533; James v. Cutler, *supra;* Houser v. Austin, (Idaho,) 10 Pac. Rep. 37; Griffith v. County, (Ark.) 3 S. W. Rep. 886; Rosseau v. Lambert, (Ky.) 7 S. W. Rep. 923; Clark v. Roots, (Ark.) 6 S. W. Rep. 728; Worsley v. Insurance Co., (Iowa,) 38 N. W. Rep. 161, Keister v. Myers, (Ind.) 17 N. E. Rep. 161; Probett v. Walters, (Mich.) 38 N. W. Rep. 320; Ellison v. Fox, (Minn.) Id. 358. It must appear that both parties have done what neither intended. Henderson v. Stokes, *supra;* Spare v. Insurance Co., *supra;* Houser v. Austin, *supra.* Where there is any miscarriage in expressing the mind of a party to a contract, it would seem to be just that he should be bound by what he fairly expressed, whether he intended it as he expressed it or not. Building Co. v. Sloan, 21 Fed. Rep. 561.

But an instrument may be reformed, though the mistake is not mutual, if the one party knew or had such implied knowledge of the mistake of the other as would make it inequitable to permit him to benefit thereby. Town of Essex v. Day, (Conn.) 1 Atl. Rep. 620; James v. Cutler, *supra;* Peasley v. McFadden, (Cal.) 10 Pac. Rep. 179. An instrument may be annulled for the fraud of a party thereto, but a bill in equity to reform a written instrument will not lie, nor will other relief be granted, in the absence of a specific allegation of fraud, where the only evidence of a mutual mistake is that complainants, being unable to understand English, relied upon statements of the defendants as to the meaning of the document, which statements were untrue. Fehlberg v. Cosine, (R. I.) 13 Atl. Rep. 110.

A mistake of law, made through the representations of an agent, may be corrected in equity, Bailey v. Insurance Co., 13 Fed. Rep. 250; and while for a bare mistake of law alone relief will rarely, if ever, be afforded, yet equity will interfere where it further appears that the defendant, availing himself of the opportunities of the mistake, will take an unconscionable advantage of the plaintiff, Benson v. Markoe, (Minn.) 33 N. W. Rep. 38; Kornegay v. Everett, (N. C.) 5 S. E. Rep. 418.

(4) Nor will such instrument be reformed unless the mistake be clearly proved. Baltzer v. Railroad Co., 6 Sup. Ct. Rep. 216; Griswold v. Hazard, 26 Fed. Rep. 135; Guilmartin v. Urquhart, (Ala.) 1 South. Rep. 897; Frederick v. Henderson, (Mo.) 7 S. W. Rep. 186. It must be satisfactorily proved,—to a moral certainty. Spare v. Insurance Co., *supra.* The proof must be so full and clear as to leave no room for controversy. Henderson v. Stokes, *supra.* It must be entirely clear and satisfactory, Rawson v. Lyons, 23 Fed. Rep. 107; clear, satisfactory, and conclusive, Cummins v. Monteith, (Iowa,) 16 N. W. Rep. 591; clear, satisfactory, and free from reasonable doubt, Wachendorf v. Lancaster, (Iowa,) 14 N. W. Rep. 316, 16 N. W. Rep. 533. It must be clear and convincing, Fritzler v. Robinson, *supra;* and leave no reasonable doubt in the mind of the court, Houser v. Austin, *supra.* It must be clear, precise, and indubitable. Ahlborn v. Wolff, (Pa.) 11 Atl. Rep. 799.

Yet while, in actions for reformation of written instruments, the mistake must be established in a clear and convincing manner, to the entire satisfaction of the court, still relief will not be denied simply because there is a conflict in the evidence upon the question of a mistake. Hutchinson v. Ainsworth, (Cal.) 15 Pac. Rep. 82.

On the unsupported testimony of the plaintiff, contradicted by his own conduct, the court will not reform a contract on the ground of mistake. Shipman v. District of Columbia, 7 Sup. Ct. Rep. 134.