PATRICK DEVEREUX AND THE ONEIDA SAVINGS BANK, RESPONDENTS, *v.* SUN FIRE OFFICE OF LONDON, APPELLANT.

*Rules as to the reformation of written contracts, entered into by mutual mistake, stated — degree of evidence required to prove the mistake in an insurance policy — the testimony of experts as to the usual rates charged for premiums on the insurance of other similar property, will be received.*

In an action, brought to have a policy issued by the defendant insuring for $100 the farm barn of the plaintiff Devereux, and the produce therein for $300, to conform to the agreement between the parties, by inserting therein the term of one year in place of sixty days, and by inserting the plaintiff Devereux's name as the person insured, and when thus reformed to recover the amount of such insurance, the referee found that on the 13th day of December, 1883, the plaintiff Devereux and the defendant, by H. L. Rockwell, its duly authorized agent, entered into a verbal agreement whereby the defendant agreed to insure the property in question for the period of one year, loss, if any, to be paid to the Oneida Savings Bank, as its mortgage interest might appear; that, in pursuance of this agreement, the defendant issued the policy in question, but that it was not written in accordance with the terms of the verbal agreement between the parties, but through mistake, inadvertence or otherwise, on the part of the defendant's said agent, and without the knowledge of Devereux, it was written for sixty days instead of for one year, the time agreed upon; and that also, through the mistake or inadvertence of said agent, the name of said Devereux, as the person insured, was omitted from the said policy; that all of such mistakes and omissions were unknown to said Devereux until after the loss had occurred.

Upon an appeal from a judgment adjudging that the policy of insurance be reformed, and that the plaintiffs recover the sum of $484 damages and costs:

*Held,* that the policy should be reformed; that in case of mistake or of fraud, or where there is a mistake by one party and fraud by the other, a court of equity is authorized to, and upon proper proof should, reform the written contract between the parties.

That, in case of mistake, the mistake must be a mutual one, one in which both parties were involved, so that the contract, as written, failed to carry out the intention or understanding of either.

That, to justify a reformation of a written contract on the ground of mutual mistake, the evidence should be clear and convincing, and such as to leave no reasonable doubt as to the existence of the mistake alleged.

The decisions relating to this subject collated, distinguished and considered by MARTIN, J.

That the rule is, not that a party can recover only in a case where there is no conflict in the evidence upon the question; but, that the proper rule is that the party seeking to reform a written agreement must establish the fact that there was a mutual mistake, not simply by a preponderance of evidence, but by such evidence as will show quite conclusively that a mistake has been made, and satisfy the court or jury of such mistake beyond a reasonable doubt.

On the trial a witness, Ferry, was asked, and allowed to answer the question, " What was the usual rate of premium on the property in question in September, 1883? "

*Held,* that a claim made, on the appeal, by the defendant, that this evidence was incompetent because the witness had not seen the property, and his testimony was simply as to what was the usual rate of insurance upon farm property, was not well taken, as the fact that the defendant received a premium which, at the usual rate, would have entitled the plaintiff to a policy for one year, was quite potent evidence upon the question whether the agreement was as claimed by the plaintiff, and, also, for the reason that the above-mentioned objection was not taken upon the trial.

The plaintiff asked a witness a hypothetical question which included a description of the property, a statement of the manner in which it was used and by what it was surrounded, and upon such hypothesis the witness was asked what the usual premium for one year would have been for an insurance for $400 on the said barn and its contents.

*Held,* that the evidence was material and competent, and that, as the witness had had two years experience in the insurance business, he was competent to testify to the usual rates of insurance upon the class of property described.

APPEAL from a judgment adjudging the reformation of a written policy of insurance and for $689.95 damages and costs, entered in Madison county December 14, 1887, on the report of a referee.

*A. H. Sawyer,* for the appellant.

*Jenkins & Devereux,* for the respondents.

MARTIN, J. :

On the 12th day of September, 1883, the plaintiff, Patrick Devereux, applied to Hiram L. Rockwell for a policy of insurance for $100 on his frame barn, situated in the town of Lenox, Madison county, N. Y., and $300 on the produce therein. Rockwell was the defendant's agent and lived at the village of Oneida. He was engaged in making, and authorized by the defendant to make, con-

tracts of insurance, and to issue policies for it against loss or damage by fire. The plaintiff Devereux claims that he made application for a policy of insurance on the property mentioned, for the term of one year, and that the agreement between him and the defendant's agent was that the defendant should issue to him a policy of insurance on the property in question for the term of one year, from September 13, 1883, the loss, if any, payable to the Oneida Savings Bank as its mortgage interest might appear. In pursuance of this application the defendant, by its said agent, issued a policy of insurance on the property in question for the period of sixty days, from September 13, 1883, and without inserting therein the name of the plaintiff Devereux as the person insured. The plaintiff paid therefor the sum of three dollars, which sum is mentioned in the policy as the amount paid for such insurance. The policy thus issued was retained by the defendant's agent until after the occurrence of the fire which destroyed the property insured. The property was totally destroyed on the 23d day of January, 1884. It is not denied but that the plaintiffs' loss equaled the amount for which the policy was issued. Proper proofs of the plaintiff's loss were duly furnished to the defendant, but the loss was not paid. The defendant claimed that the policy was for sixty days only, and that the term for which it was issued had expired before the fire occurred, that, consequently, it had no insurance on the property destroyed and was not liable to the plaintiffs. The plaintiffs then commenced this action, and asked that the policy should be so reformed as to make it conform to the agreement between the parties, by inserting therein the term of one year in place of sixty days, and by inserting plaintiff's name as the person insured, and when thus reformed to recover the amount of such insurance.

On the trial it was substantially conceeded that the plaintiff's name should have been inserted in the policy as the person insured, and that the defendant's agent through mistake omitted to insert it therein. But the question chiefly litigated was, whether the defendant by mistake inserted in the policy sixty days as the term for which the policy was issued, instead of one year.

The plaintiff testified positively that the agreement was that the policy was to be issued for the term of one year. As a circumstance bearing upon that question, the plaintiff also proved by the

witnesses Ferry and Wait, who were engaged in the insurance business at or near the village of Oneida, that they knew what the usual rates of insurance were on that class of property; that the usual rate of premium on the property in question in September, 1883, was fifty cents on $100 for a year, or two dollars on $400 for a year; and that for sixty days it was three-tenths of that amount, sixty cents.   On the other hand, the defendant's agent, in substance, testified that the arrangement between the parties was, that the policy in question should be issued for only sixty days.   His daily register was also received in evidence, in which the term was stated as sixty days.   Rockwell, however, testified that, after the fire, he told the plaintiff " that there was a bare possibility that there was some mistake; that at the time I was writing sixty-day hop policies," while the plaintiff and his son both testified that he said, " of course, we are all liable to make mistakes, and he said, I was making out sixty-day policies, and it is possible I made a mistake in that way; he said, I can't be certain until I see my daily sheet;" and the plaintiff testified, " he said possibly or probably I got mixed up with those hop men."   This last evidence was not disputed by Rockwell.

Upon this evidence the referee found that on the 13th day of September, 1883, the plaintiff Devereux and the defendant, by said Rockwell, its authorized agent, entered into a verbal agreement, whereby the defendant agreed to insure the property in question for the period of one year; the loss, if any, to be paid to the Oneida Savings Bank as its mortgage interest might appear; that, in pursuance of that agreement, the defendant issued the policy in question, but that it was not written in accordance with the terms of the verbal agreement between the parties; but through mistake, inadvertence, or otherwise, on the part of the defendant's said agent, and without the knowledge of Devereux, it was written for sixty days instead of for one year, the time agreed upon; and that also, through the mistake or inadvertence of such agent, the name of said Devereux, as the person insured, was omitted from said policy; that all of such mistakes and omissions were unknown to said Devereux until after the loss had occurred.   And the referee thereupon held that the policy should be reformed by inserting the name of Patrick Devereux therein as the person insured, and by changing the term for which said policy should run from sixty days to one

year, and that the plaintiffs were entitled on the policy, as thus reformed, to recover the sum of $484, to be paid to the Oneida Savings Bank to apply towards the payment of its mortgage.

The appellant contends that the plaintiffs were not entitled to recover in this action, and that the judgment herein should be reversed on the merits. It seems to be well settled that written instruments may be reformed in cases of mutual mistake, in cases of fraud, and where there is a mistake on one side and fraud on the other. (*Gillespie* v. *Moon*, 2 Johns. Ch., 585 ; *Welles* v. *Yates*, 44 N. Y., 525 ; *Pitcher* v. *Hennessey*, 48 id., 415 ; *Maher* v. *Hibernia Ins. Co.*, 67 id., 283 ; *Hay* v. *Star Fire Ins. Co.*, 77 id., 235 ; *Humphreys* v. *Hurtt*, 20 Hun, 398 ; *Waring* v. *Somborn*, 82 N. Y., 605 ; *Albany City Savinys Institution* v. *Burdick*, 87 id., 40 ; *Monne* v. *Ayer*, 52 Supr. Ct. [J. & S.], 139 ; *Clute* v. *Knies*, 102 N. Y., 381.)

But the important question here presented is whether the evidence was sufficient to justify a reformation of this policy on the ground of mutual mistake. The defendant earnestly insists that it was not, and claims that its position is fully sustained by the following cases : *Bryce* v. *Lorillard Fire Insurance Company* (55 N. Y., 240) ; *Miaghan* v. *Hartford Fire Insurance Company* (12 Hun, 321) ; *Moran* v. *McLarty* (75 N. Y., 25) ; *Paine* v. *Jones* (Id., 593) ; *Casey* v. *Manhattan Insurance Company* (11 Weekly Dig., 198) ; *Mead* v. *Westchester Fire Insurance Company* (64 N. Y., 453) ; *Ford* v. *Joyce* (78 id., 618) ; *Bartholomew* v. *Mercantile Marine Insurance Company* (34 Hun, 263) ; *Smith* v. *Knapp* (18 Weekly Dig., 95) ; *Rogers* v. *Traders' Insurance Company* (6 Paige, 584) ; *Little* v. *Webster* (16 N. Y. St. Rep., 107). In the Bryce case it was held that a mistake which will warrant a court of equity to reform a written contract must be a mistake made by both parties, or one by which the intentions of one party have failed of expression, and with it fraud in the other in taking advantage of the mistake, and obtaining a contract with the knowledge that the one dealing with him is in error in regard to its terms. In that case the findings showed that the defendant made the contract it intended to make, and the one it understood that the other party meant to make, and it was held that, under such circumstance the court had no power to reform the contract ; moreover,

the policy in that case was made in accordance with the application of the assured. In the Miaghan case it was held that to justify the court in reforming a contract the mistake must be one made by both parties to the agreement, so that the intentions of neither party are expressed in it. In that case there was no finding that the parties made any other agreement than that expressed in the contract, and it was, therefore, held that the contract could not be reformed.

In *Moran* v. *McLarty* the plaintiff testified that no guaranty was contemplated by the parties, and that nothing was ever said to him about guaranteeing. Two witnesses for the defendant, however, testified that the plaintiff positively agreed to guarantee immediately before the assignment was drawn, and that the assignment was dictated in his presence. The plaintiff testified that he partially read the instrument and had full opportunity to examine it, but failed to notice the guarantee. The General Term reversed the judgment because the evidence was not sufficiently clear to justify a reformation of the assignment; and the Court of Appeals held that it could not say that the judgment was improperly reversed.

In *Paine* v. *Jones* it was held that the evidence authorized the finding of the trial court that the assignee of the defendant, without fraud, obtained just the contract which it, from the first, intended to ask and have, and which it demanded, and that, therefore, the defendant failed to show fraud or mistake authorizing the reformation of the contract.

In the Casey case it was held that certain admissions made by an agent of the defendant were inadmissible as evidence, and the court there said, in an action to reform such an instrument, the evidence must be irrefragable (*Shelburne* v. *Inchiquin*, 1 Bro. Ch. C., 338), and relief is not to be given where the evidence is loose, equivocal or unsatisfactory. (Story's Eq., § 157.)

In the Mead case it was said that to justify a court of equity in changing the language of a written instrument sought to be reformed, in the absence of fraud, it must be established that both parties agreed to something different from what is expressed in the writing, and the proof should be so clear and convincing as to leave no room for doubt; and it was held that the General Term was

right in holding that the proofs were insufficient to justify a reformation of the contract. In that case, however, it was said : " If the defendant had intended to insure the building which was burned, and had received the premium for that insurance, but by a clerical error the wrong description had been inserted in the policy, a case would be made out for reformation, but those facts are not. established." (See, also, *Born* v. *Schrenkeisen*, 110 N. Y., 55.)

In *Ford* v. *Joyce* no mutual mistake or fraud was alleged ; the referee did not find fraud or mistake, but found an agreement in language differing from the written agreement, the court held that, construing the finding as implying a mistake, the evidence did not justify it, and then said : " While parol evidence is admissible to show a mistake in a written agreement, yet to justify a reformation of the instrument on that ground, the mistake should be proved as much to the satisfaction of the court as if admitted."

In the Bartholomew case it was held : In order to justify the reformation of a policy of insurance, upon the ground that by mistake it does not conform to the agreement made by the parties to it, the evidence establishing the mistake must be unquestionable. It must be so clear and convincing as to leave no room for doubt.

In *Smith* v. *Knapp* it was said that proof of a claim of mutual mistake should be so clear as to leave no room for doubt. In that case it was held that the finding upon the question was decidedly against the weight of evidence.

In *Little* v. *Webster* it was said : " The rule seems to be well established that in order to justify the court in inserting into a written contract that which has been omitted by the parties, the evidence should be strong, conclusive, and in some cases it has been held should be beyond all reasonable doubt. But perhaps this expression is too strong. There must be at least very conclusive evidence that by mistake the contract does not represent the intention of the parties, or that by mistake an omission has taken place, or clauses have been inserted which were not intended, or there must be proof of fraud having been perpetrated by one party against the other who seeks the reformation."

This survey of the authorities leads us to the conclusion : 1. That in cases of mistake or of fraud, or where there is a mistake by one

party and fraud by the other, a court of equity is authorized to, and upon proper proof should, reform the written contract between the parties. 2. That in case of mistake, the mistake must be a mutual one, one in which both parties are involved, so that the contract, as written, fails to carry out the intention or understanding of either. 3. That to justify a reformation of a written contract on the ground of mutual mistake, the evidence should be clear and convincing and such as to leave no reasonable doubt as to the existence of the mistake alleged.

In applying these principles to this case we find that the evidence of the plaintiff is to the effect, that there was a mistake by the defendant's agent in writing the policy in question for sixty days instead of for one year, and that such a mistake was a mutual one, as it was expressly agreed by both parties that the policy should be written for one year. If no evidence had been given except that introduced by the plaintiff, it would appear quite manifest that the plaintiff would have been entitled to the relief sought and awarded to him by the judgment in this action, as in that case it would have been obvious that there was either a mutual mistake of the parties, or that there was a mistake on the part of the insured and fraud on the part of the insurer. So that the question of the validity of this judgment depends upon the question of the weight and quality of the evidence, rather than upon the question of the mutuality of the agreement.

But it is said that under the doctrine of the cases cited, the plaintiff was not entitled to recover, because the evidence of the plaintiff was contradicted by Rockwell. If it is true that such an action can only be maintained when there is no conflict in the evidence, then it must follow that a written contract can rarely, if ever, be reformed. If there were no dispute between the parties there would be no question for litigation. If where there is a dispute and a consequent conflict in the evidence the party must fail as a result of such conflict, then the remedy by reforming a contract would be of little or no value, and such relief could rarely, if ever, be obtained. The result of such a rule would be a practical denial of this remedy. While some very strong expressions have been used by the courts and judges in stating the degree of evidence required to justify the reformation of a written contract, yet we think it was never

intended to establish the rule that a party can recover only in a case where there is no conflict in the evidence upon the question ; but that the rule intended to be established is, that the party seeking to reform a written agreement must establish the fact that there was a mutual mistake, not simply by a preponderance of evidence, but by such evidence as will show quite conclusively that a mistake has been made, and satisfy the court or jury of such mistake beyond a reasonable doubt.

The real question, therefore, is, did the evidence before the referee present a case where, under the rules stated, the plaintiff was entitled to a judgment reforming this policy so as to make it conform to the agreement of the parties as claimed and proved by him.   As we have already seen, the plaintiff testified positively that the agreement between the parties was that the policy should be for the term of one year.   He is corroborated by the fact that the premium paid was the premium which was usually charged for a policy for that amount for the term of one year on property of that character   It is true that Rockwell testified that there was no regular rate for insurance on that class of property ; and Wait, who was also an agent of the defendant, testified that the rate charged was fair, still, the building insured is described in the policy as a " farm barn," and there is nothing in the policy in the form of a consent to the use of the property for hazardous purposes, or to otherwise indicate that it was not ordinary farm property and used as such.   We find it quite difficult to believe that the defendant intended to charge or that the plaintiff agreed to pay three dollars, or (if the sum of one dollar be deducted for the policy and a survey of the property) two dollars for a policy on this barn for two months when the regular rate was but sixty cents.   We think this fact is entitled to great weight in determining the question, and that it tends to show quite conclusively that the agreement was as testified to by the plaintiff. On the other hand, the defendant's agent who made the mistake, if one was made, testified positively that the agreement was not as claimed by the plaintiff, but was identical with the written contract. His evidence was, however, somewhat impaired by the fact that when the question first arose he was unable to assert that he had not made the mistake claimed, and explained that it probably or possibly occurred from the fact that about that time he was engaged

in issuing policies on hops for the term of sixty days. This explanation shows that the mistake claimed might have easily occurred. Moreover, he is compelled to admit that he made a mistake in not inserting the plaintiff's name in the policy, which shows that he was at least somewhat liable to mistake. The defendant also claims that this witness was corroborated by his register, and that his daily report would also have corroborated him if it had been admitted in evidence. If this evidence can be regarded as corroboratory of Rockwell's testimony, the corroboration is, at most, slight. The daily report and register were made from the policy, they were merely copies; they were made at the same time. If the policy was wrong, it would naturally and necessarily follow that the same error might be expected to appear on the register and daily report.

A careful study of the evidence in this case has led us to the concussion that it was sufficient to justify the referee in finding that the agreement between the parties was for a policy for the term of one year, and that the defendant's agent intended to issue a policy for one year, but by clerical error he inserted sixty days in the policy as the term for which it was to run, instead of one year, the time intended, and in holding that the policy should be reformed and enforced.

On the trial the witness Ferry was asked: "What was the usual rate of premium on the property in question in September, 1883?" This question was objected to by the defendant "as immaterial and improper." The objection was overruled and the defendant excepted. The defendant now claims that this was error, because the witness had not seen the property, and his testimony was simply as to what was the usual annual rate of insurance upon farm property. We do not think this exception well taken. The evidence was material and competent. The fact that the defendant received a premium, which at the usual rate would have entitled the plaintiff to a policy for one year, was quite potent evidence upon the question whether the agreement was as claimed by the plaintiff. Moreover, the objection was not placed upon the ground that the witness had not seen the property, and hence, if it were otherwise valid, it would not be available here.

The plaintiff asked the witness Hatch a hypothetical question, which included a description of the property, how used and by

what surrounded; and upon such hypothesis the witness was asked what the usual premium for one year would have been for an insurance for $400 on the said barn and its contents. This was objected to, first, as immaterial and incompetent; second, that the witness was not shown competent to give an opinion. The objections were overruled and the defendant excepted. The defendant claims that this was error, because the witness had not seen the property. We do not think this exception valid. The evidence was material and competent; the witness had had two years' experience in the insurance business; he was competent to testify to the usual rates on the class of property described.

As no other questions are raised by the appellant, it follows from these considerations that the judgment appealed from should be affirmed.

Judgment affirmed, with costs.

FOLLETT and KENNEDY, JJ., concurred.

Judgment affirmed, with costs.