## EVERETT *v.* JONES *et al.*

*(Supreme Court, General Term, Fourth Department.   April, 1891.)*

REFORMATION OF CONTRACTS—PARTNERSHIP AGREEMENT.

A partnership agreement between plaintiff and defendants, J. and H., recited that the capital had been paid in as follows: "Said E. [plaintiff] has paid in $2,000 cash and his two individual notes of $1,000 each, payable to the order of said J. * * * Said J. and H. have delivered in the real estate, fixtures, machinery, and tools," and a one-third interest conveyed to each of the partners.   The real estate, machinery, etc., was owned by J. and H., and valued at $12,000, the amount of the capital of the firm as entered on the books.   Soon after the formation of the partnership $600 was needed for the business, and was raised by each partner contributing $200.   No inquiry was made as to the disposition of $2,000 paid by plaintiff, and the claim that the $2,000 cash and $2,000 in notes were part of the capital was first made by plaintiff a year afterwards.   *Held*, that the capital of the firm was only the real estate, machinery, etc., and the money and notes given by plaintiff to defendants were in payment of the purchase money of a third interest therein, and the partnership agreement would be reformed accordingly.

Appeal from special term, Jefferson county.

Action by William H. Everett against Charles E. Jones and Catharine Hunter.   From an interlocutory judgment directing the reformation of a partnership agreement between plaintiff and defendants, and the dissolution of the partnership and an accounting, plaintiff appeals, and also moves for a new trial, made under section 1001, Code Civil Proc.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*Watson M. Rogers,* for appellant.   *Porter & Walts,* for respondents.

MERWIN, J.   On or about the 6th day of August, 1888, the plaintiff and the defendants formed a copartnership in the business of the manufacture and sale of mechanical wood-pulp, at the village of Dexter in Jefferson county, upon premises prior to that time owned and occupied by the defendants.   The title to the premises was in the defendant Jones, but he had, on the 11th February, 1888, given a contract of sale of an undivided half thereof to the defendant Hunter, upon which there was unpaid $1,500.   On the 6th August, 1888, the plaintiff paid to Jones the sum of $2,000 in cash, and executed and delivered to him two notes of $1,000 each, payable to the order of Jones, with interest, one being payable on April 1, 1889, and the other April 1, 1890. At about the same time a written agreement was prepared by the plaintiff, or under his direction, and was signed by all the parties, and the defendant Jones executed and delivered to plaintiff a deed of an undivided one-third of the property, and a similar deed to the defendant Hunter.   Thereupon the the parties commenced their business, and continued until about the 1st of August, 1889, when differences arose as to the ownership of the $4,000 advanced in money and notes by the plaintiff; the plaintiff claiming that it was a part of the capital of the concern, and the defendants claiming that it belonged entirely to them as the purchase price of a one-third interest in the property.   Thereupon the plaintiff commenced this action for a dissolution, alleging, among other things, that the $4,000 referred to was part of the capital, and should be accounted for as such.   The written contract was attached to the complaint, and sustained this view.   The defendants, in their answer, among other things alleged that the agreement in fact between the parties was that the plaintiff should pay the defendants $4,000 for one-third interest in the property; that the property was considered to be of the value of $12,000, and was the capital of the concern, of which, upon the conveyance to plaintiff, the parties became equal owners; and that by mutual mistake the written articles did not state correctly the agreement, and a reformation was asked.   The special term found with the defendants upon the facts, and directed a reformation accordingly.   Upon this appeal both parties are content to have a dissolution, and the struggle is over the reformation of the agreement and

the ownership of the $4,000. The main question is whether the evidence is sufficient to authorize reformation. The clause of the agreement, over which the dispute is, is as follows: "*First.* The capital stock for carrying on said business has been furnished and delivered in as follows: Said Everett has paid in $2,000 cash and his two individual notes of $1,000 each, payable to the order of said Chs. E. Jones, one note payable April 1st, 1889, and the other April 1st, 1890. Said Jones and Hunter have delivered in the real estate, fixtures, machinery, and tools, complete, for the manufacture of mechanical wood-pulp above mentioned and described, and also the stock and material accumulated by said firm of Jones and Hunter, with exception of one bill of spruce, amounting to $88.83. As a part of the consideration of this agreement the said Jones hereby agrees to convey to each said Everett and Hunter an undivided third of the real estate above mentioned, and hereby transfers a one-third interest to each of them of the machinery, tools, and fixtures of the saw-mill on said premises, and the said Jones and Hunter hereby transfer to said Everett a one-third interest in all tools, fixtures, and machinery used and connected with said real estate and pulp-mill. Said Jones and Hunter agree to complete the bulk-head and flume on said premises at their own cost and expense, and hereby assume and agree to pay all debts and obligations of said firm of Jones and Hunter." The agreement also provided that none of the parties should "withdraw from said business and firm more than his share of the profits which may be accrued, but each has privilege of drawing from said company and business $10 weekly." The agreement also provided that an account of stock and liabilities should be taken on the 1st days of January, April, July, and October, commencing January 1, 1889, at which times there should be an adjustment of profits and losses and a division of the profits. The profits might be left in the business if the majority so determined, but no share of profits exceeding $500 should be retained without the agreement of all parties. The money and notes advanced by the plaintiff were delivered by him to Jones. Of the money $1,500 was applied in payment of the balance due from Hunter on his contract from Jones, and the balance was used to pay a debt of the firm of Jones & Hunter. The plaintiff testified that he knew that the money was to go to pay debts of the defendants. The plaintiff kept the books of the new firm. In them he entered the capital at $12,000, and credited to each member $4,000 as paid in. There was no statement with regard to the notes and money delivered by plaintiff to Jones. The defendants were not charged with having any of the capital. The defendant Jones testifies that when he received the $2,000 in money from plaintiff he gave him back a receipt, stating that it was "in part payment for the property." This plaintiff does not deny. In the fall of 1888, the firm being called upon to raise $600 for the purpose of repairing the dam connected with the water-power of the property, each member raised from his individual means $200. At this time no suggestion was made by the plaintiff that the defendants had $2,000 of the capital, and the plaintiff testifies that he did not then make any inquiry as to where that money had gone. At other times, occasionally, as the plaintiff testifies, he and the defendant Jones advanced small sums for the use of the firm, and were repaid from the profits. Very evidently the firm needed but little capital aside from the property itself. Small loans were sometimes made at bank. There was apparently no occasion for a cash capital to the amount of $2,000. A provision was made in the agreement for the accumulation of the profits, which would not have been at all necessary had they supposed that they had surplus capital to the amount of $4,000. When the first $1,000 note became due on April 1, 1889, the plaintiff gave in renewal thereof two $500 notes,—one due August 7, 1889, and the other August 7, 1891, both payable to the order of Jones. This renewal, as the court finds, was at the request of plaintiff. The first time that plaintiff claimed the $2,000 was part of the capital was, as the plaintiff himself testi-

fies, in April, 1889, at the time his first note became due. He says that he then told Jones he should not put in any more money until they made the capital stock good on their part. Jones, however, testifies that the first he heard of plaintiff's claim was about August 1, 1889, just before the $500 note given in part renewal of the $1,000 note became due. At this time the business was not prosperous. The value of the property at the time of the formation of the partnership is found by the court upon sufficient evidence to have been from ten to twelve thousand dollars. The profits at first were large, but in November, as the plaintiff testifies, they had stopped selling, and the mill was filled with pulp.

In *Devereux* v. *Fire Office*, 4 N. Y. Supp. 655, it was held by this court that to justify a reformation of a written contract on the ground of mutual mistake the evidence should be clear and convincing, and such as to leave no reasonable doubt as to the existence of the mistake alleged. Does the evidence in this case come up to that standard? The defendant Jones and Mr. Hunter, the husband and agent of the other defendant, testify in one way; the plaintiff the other. The plaintiff testifies that he said to Hunter: "I will put in $4,000 into this business,—$2,000 in cash and $2,000 in notes,—and Mr. Jones must give each of us a title to the undivided third of the property." The defendant Jones and Mr. Hunter testify that they offered to sell a third interest to plaintiff for $4,000, and then become equal partners, and that plaintiff accepted the offer. The theory of the defendants is strongly corroborated by the conduct of all the parties. The $4,000 did not go into the business, and no one acted as if it was so expected. The plaintiff says Hunter was to have title to one-third, and still there was no way for Hunter to pay Jones the $1,500 balance due on the contract except by the use of a part of the $4,000. The agreement provided that none of the parties should withdraw from the business more than his share of the profits except $10 a week, and still, if the theory of plaintiff is correct, the defendants had and used $2,000 of the capital to the knowledge of plaintiff without objection. The failure of plaintiff to charge the defendants with this upon the books of the firm which he kept, his acceptance of a receipt from Jones for the $2,000 to apply on the purchase of the property, his joining with defendants in raising the $600 needed in the fall of 1888, his failure to raise any question on the subject until the spring of 1889, when the business was less prosperous, his making the notes and renewals to the order of Jones, all indicate conduct on his part utterly inconsistent with his present theory, and conclusively and beyond a reasonable doubt showing, in connection with the other evidence, that the $4,000 was not a part of the capital, and was not so considered by the plaintiff until long after the agreement was made. That being so, the agreement failed to express the contract in fact made or the mind of either party. It was therefore a case of mutual mistake. But it is said that all parties knew the contents of the agreement, and the mistake, if any, was as to the true construction or meaning of the paper as written, and that, therefore, it was a mistake of law, and the parties have no remedy. In *Pitcher* v. *Hennessey*, 48 N. Y. 416, it was held that where parties intending to reduce a parol agreement to writing, and because they are ignorant of the force of language and misunderstand the meaning of the terms used, make a contract different from that designed, equity will grant relief by reforming the instrument and compelling the parties to execute and perform their agreement as they make it, and it matters not whether such a mistake be called one of law or of fact. A similar doctrine is laid down in 1 Story, Eq. Jur. § 115; 2 Pom. Eq. Jur. § 845. So in *Born* v. *Schrenkeisen*, 110 N. Y. 59, 17 N. E. Rep. 339, it is said that where there is no mistake about the agreement, and the only mistake is in the reduction of that agreement to writing, such mistake of the scrivener or of either party, no matter how it occurred, may be corrected. Within the rule of the *Pitcher Case*, the defendants are entitled to relief.

At the trial the point was taken by the plaintiff that the answer did not contain any sufficient allegations of facts showing a mistake. The court, in its decision, after finding the facts, directed that the answer be deemed amended so as to conform to the facts as found. This is claimed to be error. There is no amended answer on the record. In the answer all the material facts are in substance alleged. It is stated that the agreement between the parties was that plaintiff should purchase of defendants a one-third interest for the price of $4,000; that the $4,000 paid by plaintiff in money and notes was for such price, and belonged to the defendants, and was not a part of the capital; that the capital was the real estate and plant in which, upon the deed to plaintiff, each was equally interested; and that "any meaning from the construction or use of language contained in the said articles of copartnership, in the clause thereof designated therein as ' first,' of a contrary meaning to the foregoing statement, is a misstatement and mistake mutually made, and a fraud upon the rights of the defendants, and which at the time was not discovered by defendants, and mutually overlooked by the parties to said agreement." We think the answer is sufficiently broad to admit of the award to defendants of the relief given, which in substance was to reform the articles so as to show that the $4,000 furnished by plaintiff was not a part of the capital, but belonged to defendants as the purchase money of a third of the property. In this view the direction for the amendment of the answer is not material. There are no exceptions to rulings upon evidence that call for special consideration. The judgment should be affirmed. Motion for new trial denied, and judgment affirmed, with costs. All concur.