<hr />

(23 Misc. Rep. 173.)

### STERNBACK v. FRIEDMAN et al.

(Supreme Court, Special Term, New York County. March, 1898.)

1. CONTRACTS—PLEADING DURESS.
   The allegation of duress is an affirmative defense, which must be particularly pleaded.
2. PLEADING—AMENDMENT.
   Under Code Civ. Proc. § 723, an amendment of an answer substantially changing the defense is inadmissible.
3. CONTRACTS—EVIDENCE OF DURESS.
   Evidence either that threats were uttered which were not shown to have constrained the will of the promisor, or that a mortgage was executed to avert an impending receivership, or that a threat of a criminal prosecution was designed to coerce, but not shown to have been effective, is insufficient proof of duress.
4. SAME—DISCLAIMER.
   A party who claims a contract was executed under duress must disclaim it on recovery of freedom, as a subsequent recognition is equivalent to ratification.
5. REFORMATION OF CONTRACT.
   To entitle a party to reformation of contract for mistake, he must show plain mistake by satisfactory proof; or for fraud, a clear preponderance of the proof is indispensable. That the evidence is not inconsistent with such conclusion is insufficient.
6. RELEASE OF SURETY.
   The doctrine that if a creditor loses, or, without the consent of the surety, parts with, his security, the surety is discharged to the extent of the secu-

rity, has no application to a case where a party has himself fraudulently abstracted the security which he previously pledged.

**7. TERMINATION OF AGENCY.**

The agent who abandons the purposes of his agency, and commits a fraud for his own benefit, ceases to act in the scope of his authority, and to that extent as agent.

Action by Philip Sternback against Yette Friedman and others. Judgment for plaintiff.

Myers, Goldsmith & Bronner, for plaintiff.
Leventritt & Nathan, for defendants.

PRYOR, J. In an action to foreclose a mortgage given to secure the debt of another, the surety mortgagor defends upon three grounds: First, that the bond and mortgage were extorted by duress; secondly, by way of counterclaim, that the bond and mortgage should be reformed so as to express what is alleged to be the true intent of the parties; and, thirdly, that the sum recoverable be reduced by the amount of securities claimed to have been surrendered by the plaintiff to the principal debtor. No allegation of duress appears in the answer; but manifestly it is an affirmative defense, to be pleaded, too, with particularity. Lord v. Lindsay, 18 Hun, 484, 485. Supposing evidence of the fact, still an amendment of the answer is inadmissible, because it would substantially change the defense. Code Civ. Proc. § 723.

But, in truth, here is no sufficient proof of duress. Conceding the efficacy of a menace of harm to a son-in-law to control the will of a mother-in-law, the threat and the consequence must be apparent. "It is not sufficient to establish duress to show that the threats were uttered; it must be shown that they constrained the will of the promisor, and so induced the promise." Dunham v. Griswold, 100 N. Y. 224, 3 N. E. 76. Probably the defendant executed the mortgage to avert the impending receivership, but it is not duress to enforce one's legal rights, even by an arrest of the person. McPherson v. Cox, 86 N. Y. 472; Dunham v. Griswold, supra. The threat of criminal prosecution was by implication only (Insurance Co. v. Meeker, 85 N. Y. 614); but if direct, and designed to coerce, it is not shown to have been effective (Barrett v. Weber, 125 N. Y. 18, 25 N. E. 1068). The defendant herself does not pretend that her motive in making the mortgage was to save her son-in-law from punishment, and she admits the partial validity of the security, which, if got by duress, must be wholly void. Not until the trial did she intimate that her act was involuntary, and so long an acquiescence prevents its repudiation. A party from whom a contract has been wrung by duress must disclaim it on the recovery of freedom. Subsequent recognition is the equivalent of ratification.

The defendant alleges that by her mistake and the fraud of the plaintiff the instrument in suit does not express the real agreement of the parties. If this be the fact, the remedy of reformation is an available defense. Pitcher v. Hennessey, 48 N. Y. 415; Born v. Schrenkeisen, 110 N. Y. 55, 17 N. E. 339; Avery v. Assurance Soc., 117 N. Y. 451, 23 N. E. 3. But, to authorize the relief, the defendant "must show a

plain mistake, made out by satisfactory proofs." Nevius v. Dunlap, 33 N. Y. 676. "To justify a reformation of the instrument, the mistake should be as much to the satisfaction of the court as if admitted." Ford v. Joyce, 78 N. Y. 618. "A person who seeks to rectify a deed on the ground of mistake must establish, in the clearest and most satisfactory manner, that the alleged intention to which he desires it to be made conformable continued concurrently in the minds of all parties down to the time of its execution, and also must be able to show exactly and precisely the form to which the deed ought to be brought." Roberts v. Derby, 68 Hun, 299, 303, 23 N. Y. Supp. 34. "To justify the reformation of a contract, upon the ground of mistake, it must appear that the mistake was mutual, and the fact that a different agreement was intended by the parties must be established by evidence uncontrovertible, clear, and convincing." Allison Bros. Co. v. Allison, 144 N. Y. 22, 38 N. E. 956.

Upon an attentive examination of the record, I am unable to conclude that the bond and mortgage in question do not embody the mutual agreement of the parties. On the contrary, the preponderance of proof, in my judgment, is that the defendant understood and assented that the mortgage should be a security as well for the return of plaintiff's capital as for the general indebtedness of the firm. At the time of execution the papers were read aloud in the presence of the parties; and, even if Rosenthal did make protest against the stipulation for securing the $10,000, the defendant nevertheless signed the instruments and duly acknowledged their execution. True, there is testimony of a promise on behalf of the plaintiff to expunge the obnoxious clause, but the statement is incredible. When a moment of time and a dash of the pen would have sufficed for the alteration, the folly of the defendant in deferring it, in confiding it to the party who, she says, had fraudulently interpolated the provision, and in not promptly assuring herself of the correction, or else repudiating the paper, evinces a stupidity which she did not display as a witness. Though an illiterate woman, she is not blind in the perception of her own interests, and there were those about her who would have rescued her from the perils of such improvidence.

In view of the contradictions between the adverse witnesses and the opposite inferences to be drawn from the circumstances of the case, the language of Van Brunt, P. J., may be adopted with propriety: "The evidence is conflicting. The witnesses seem to be equally reliable. Both are supported by certain circumstances attending the negotiations, and one or other of the parties must have knowingly testified untruly. There is not that preponderance of evidence—that proof, clear and decisive—which would justify the court in reforming the contract." Little v. Webster (Sup.) 1 N. Y. Supp. 315, 316. Nor does the evidence authorize the inference of fraudulent contrivance in procuring the mortgage. To establish the fact, a clear preponderance of proof is indispensable; but the most that may be claimed by the defendant is that the evidence is not inconsistent with such conclusion. This is not enough. Shultz v. Hoagland, 85 N. Y. 464, 467.

It is insisted, finally, that, by suffering the principal debtor to resume possession of securities which he had deposited with the plain-

tiff, the latter has so far exonerated the defendant surety. The rule is elementary that "if the creditor loses, or, without the consent of the surety, parts with, such security, the surety is discharged to the extent of the security." Pol. Cont. 251; Hubbell v. Carpenter, 5 Barb. 520, 531. The infirmity of the defense, however, is that here the debtor got possession of the securities against the will and without the fault of the plaintiff. The proof is clear that neither he nor those who were acting for him intended that the debtor should have the securities but with the consent of the defendant. They declined to deliver the securities to the debtor, and sent them instead to the defendant; but the debtor intercepted the messenger, corrupted his fidelity by blandishments and a bribe, and so fraudulently obtained custody of the securities. They were delivered to the accomplice of the debtor, in disregard of the agent's duty, and to serve a purpose of his own inconsistent with his principal's interest. "When an agent abandons the object of his agency, and acts for himself by committing a fraud for his own exclusive benefit, he ceases to act within the scope of his employment, and to that extent ceases to act as agent." Henry v. Allen, 151 N. Y. 1, 11, 45 N. E. 355; Benedict v. Arnoux, 154 N. Y. 715, 729, 49 N. E. 326; Bienenstok v. Ammidown, 155 N. Y. 60, 49 N. E. 321. Again, the doctrine which the defendant invokes "has no application to a case where the principal has himself fraudulently abstracted the very collateral which he had previously pledged." McShane v. Bank (Md.) 20 Atl. 776, 781.

Judgment for plaintiff pursuant to the prayer of the complaint, but without costs.