# CASES DETERMINED

IN THE

# ST. LOUIS COURT OF APPEALS.

## OCTOBER TERM, 1879.

---

JOHN H. BOBB, Respondent, *v.* CHARLES BOBB ET AL., Appellants.

| 7 | 501 |
|---|---|
| 35 | 260 |
| 7 | 501 |
| 54 | 92 |

### October 28, 1879.

1. A direct conflict of testimony is conclusive against the reformation of a written instrument.
2. Where a reformation of a deed is sought, evidence of the grantor's intentions is inadmissible unless it be shown that they were understood by the grantee.
3. Equity cannot secure equality against the manifest intention of the donor.
4. Where one makes an irrevocable disposition of his property for the benefit of his existing children, a court of equity cannot, at the donor's instance, disturb the vested rights thus acquired, in order to let in after-born children.
5. Where the deed expresses a consideration, the title passes whether the consideration is paid or not, the grantor is estopped, and no use can be raised in him.
6. Where, by recorded conveyance, a father conveys promissory notes to his minor children, the fact that he retains the notes in his possession is not fatal to the title of the children. The situation of the parties may render the manual delivery of personalty unnecessary.
7. The appellate court will not disturb a finding of compound interest against a trustee where the evidence is not preserved, so that it does not appear that the trustee's profits were not large enough to warrant the computation.

(501)

Appeal from St. Louis Circuit Court.

*Affirmed.*

Martin & Lackland, M. Kinealy, and Jeff. Chandler, for appellants.

Hitchcock, Lubke & Player and Henry A. Clover, for respondent.

Lewis, P. J., delivered the opinion of the court.

In April, 1843, defendant Charles Bobb, who is the father of all the other parties beneficially interested in this cause, conveyed to Miss Hannah Letcher, now Mrs. John D. Stevenson, for the expressed consideration of $10,000, a considerable quantity of real estate situate in the city of St. Louis. It does not satisfactorily appear that any consideration was really paid. Miss Letcher was a relative, and an inmate of Charles Bobb's household, enjoying his entire confidence. It appears to have been his wish to place this property in her hands in order to secure it against possible vicissitude in his own affairs, and so that it might be ultimately enjoyed by his wife and children. At that time his children were three, — Charles L., John H., and William H., all infants of tender years. Afterwards, and prior to January, 1845, William H. died, and a daughter, Lucy G., now the defendant Lucy G. Taylor, was born. In January, 1845, Miss Letcher, being about to marry, executed and delivered a deed conveying all of the property remaining in her hands to Charles Bobb, as trustee, for the sole use and benefit of Mary H. Bobb, his wife, and John H., Charles L., and Lucy G. Bobb, his children, with power to sell or dispose of the same as the beneficiaries might direct. Miss Letcher had previously sold some parcels of the real estate, and held notes of the purchasers, secured by deeds of trust. These notes went into the possession of Charles Bobb, who collected the proceeds. There were certain other notes, known as the Kelly and Sellick notes, which, with the deed of trust securing their payment, were in December,

1843, conveyed, in a deed which was duly acknowledged and recorded, by Charles Bobb and the trustee in the deed of trust, to Charles L. Bobb, John H. Bobb, and William H. Bobb.

The present suit was commenced in 1859. Its general objects are, to restrain the defendant Charles Bobb from further acting as trustee, or in any manner disposing of or interfering with the property; to compel an accounting for his receipts and disbursements as trustee; and to divest the entire legal title out of the trustee and cause it to be vested in the *cestuis que trust*. After a lengthy trial upon preliminary issues, and two successive references, the whole occupying a period of more than eight years, the Circuit Court decreed substantially according to the prayer of the second amended petition.

The first question to be here considered arises upon the prayer of defendants, Charles Bobb, George L. Bobb and his sister Cora S. Taylor, for a reformation of the deed of January, 1845, from Hannah Letcher to Charles Bobb, trustee. It is claimed that the real intention of the parties was to establish a trust for the benefit of Mary H. Bobb, wife of Charles Bobb, and of all their children then in being or thereafter to be born, but that the scrivener, by mistake and without authority, inserted the names of the then living children only. As the deed now stands, John H. Bobb, Lucy G. Taylor, and the representatives of Charles L. Bobb, who have died since the institution of the suit, are each entitled to six-twentieths of the estate, while George and Cora, who were born after the execution of the deed, can claim only one-twentieth part each, as heirs of their mother, Mary H. Bobb, who died in 1853. A reformation of the deed as proposed would give to the defendants George and Cora shares equal with those of the other beneficiaries.

As to what was intended at the execution of the deed, there is a direct conflict in the testimony given by the parties themselves. Charles Bobb, the grantee, swears

positively that it was understood that provision was to be made for his after-born children, if any, as well as for those named in the deed. Mrs. Stevenson, the grantor, testifies that no such understanding existed. On the contrary, she says an objection was raised by Mrs. Bobb, who was present, to the effect that children might be born to her and her husband thereafter, who would get no benefit of the estate. To this Charles Bobb made answer that if any such should be born he would provide for them by other means. We may assume an equal degree of credibility in each of these witnesses. They are the only persons living who can testify directly to the facts in issue. Were there no other testimony, such a conflict would be in itself conclusive against any reformation of the deed. The instrument itself, as a chosen record of what the parties intended, would turn the scale. The well-known rule requires that, in order to effect the reformation of a deed in material particulars, the proofs must be satisfactory and conclusive that the paper does not express what both the parties·intended, understood, and agreed upon at the time when it was written. But there are in this case facts in evidence which strongly corroborate the presumption that the deed under consideration truly sets forth the original purposes of its execution.

·In the year 1854, Charles Bobb was actively managing the trust property. He was, or should have been, familiar with his duties as trustee. The creation of the trust, and the incidents of its contrivance, were then comparatively fresh in his recollection. If he cared about keeping correct accounts and properly preserving the rights of his *cestuis que trust*, their several and respective shares and titles, as originally established, must have been at least occasional subjects of contemplation. In that year a suit was instituted by Charles Bobb, as trustee and guardian, together with his children, John H., Charles L., Lucy G., Cora S., and George L. Bobb, against John D. Stevenson and wife, to procure a reformation of the deed of January, 1845, so

that the trustee might sell any of the trust property at his own option, without a written direction from the beneficiaries, which the face of the deed required. The petition in that case was sworn to by Charles Bobb. It sets forth as the interests of the several beneficiaries, that Charles L., John H., and Lucy G. Bobb were each entitled to a share of three-tenths, and that Cora S. and George L. Bobb were entitled to shares of one-twentieth each. This statement accords precisely with the face of the deed as affected by the death of Mrs. Bobb within the previous year, and the division of her share among the five children. It is incredible that the trustee which engaged in procuring a reformation of the deed to make it conform with the real intention of the parties, should have deliberately aided in perpetuating such a gross falsification of that intention as his present claim implies. The final decree in the suit of 1854 declared the several interests of the parties as stated in the petition. Again, in 1869, as appears from the testimony, the trustee directed his agent to account to Charles L. Bobb for three-tenths of the profits of the trust estate. Here was another distinct recognition of the correctness of the deed as it stood. It shows that he then knew what were the written provisions of the deed. The fact that he never asked for a reformation in this particular until the filing of his answer in the present suit, furnishes a strong presumption against his previous belief that any such reformation was needed. To say that he knew of the error in the deed, and yet for years permitted some of the beneficiaries to enjoy, or to be credited with, more than they were entitled to, while others were deprived largely of their just rights, would imply a persistent dereliction of duty which cannot be assumed without satisfactory proofs, and which, if proved, would be far from fortifying the trustee's credibility. The testimony so decidedly preponderates in favor of the finding of the Circuit Court upon this issue, that we find it unnecessary to inquire how far the plaintiff's position may be sustained

by his claim of *res adjudicata* with reference to the decree of 1854.

Defendants claim that there was error in the court's refusal to allow Charles Bobb to answer certain questions touching his intentions in the execution of the deed to Hannah Letcher, and in the taking of the deed from her. Such intentions would not be admissible unless they were shown to have been understood and shared in by the other party. It is not pretended that there was proof of these facts. But whether this were so or not, no injury could result to defendants from the exclusion complained of. The same witness testified so fully "that his intention was that all his children, born and to be born, should share equally under the conveyance," that defendants' counsel take strong grounds upon this testimony as conclusive proof of the facts stated.

It is urged that "courts of equity are ever eager to secure equality amongst children, and to preserve the younger from the greed or rapacity of their elder brethren." The case of *Phillips* v. *Phillips*, 50 Mo. 608, is cited as an example. The assumed parallel with the present case fails in essential particulars. A father, having three children, conveyed the bulk of his lands to his eldest son, in consideration of love and affection. When asked why he did not make a deed to each child, he answered that his son would " never defraud his brother and sister." This was contemporaneous with the execution of the conveyance. After the father's death, the son sought to have the title confirmed in him, alleging the loss of the deed. The Supreme Court held that he would be entitled to the relief only upon condition that he would secure to the brother and sister, or their heirs, their proper shares in the property. Here the court undertook to effectuate the manifest intention of the father when he made the conveyance. The son took the deed with a full understanding of that intention. But in the case before us the testimony fails to

show that the father's intention was, at any time, other than that which appears upon the face of the conveyance. According to Mrs. Stevenson's testimony, the brother and sister, George and Cora, or any other children then unborn, were to be provided for, not by the recognized beneficiaries, but by the father himself, in some future arrangement, if occasion should arise. To hold that the present beneficiaries must secure their younger brother and sister in shares equal with their own, would be, not to carry out the original purpose of the conveyance, but to make a new deed which the parties never contemplated.

Counsel for defendants comment with severity on the spectacle of a son pursuing his impoverished father for the last dollar that the strong arm of the law may wring out of a provision whose early source was in the parent's bounty and affection for his children. If this be really a just view of the subject, and if it be revolting to the common sentiment of humanity, such considerations can yet have no influence with a properly constituted court, where the law of the case is plain. Mere sentiment is not law. The defendant Charles Bobb, while owner of the property, made an irrevocable disposition of it, as he had a perfect right to do. The possible legal consequences were all before him, and his judgment was his own. In the exercise of this no court could have dictated his course, and the usurpation of authority would be no less flagrant if, in defiance of vested rights, one should now undertake to correct or modify what he at last discovers to have been an unwise conclusion. These views apply equally to the alleged hardship upon the younger children. If no moral influence suffices to restrain the plaintiff's hand from the entire fruits of his father's supposed improvidence, we know of no statute or common-law rule which may compel him to a fraternal sharing with the losers.

It is contended for defendant, that as no consideration was in fact paid for the conveyance from Charles Bobb to

Hannah Letcher, the deed was therefore void, and the title remained in Charles Bobb. But the law creates no such result. In suits upon warranty, or for rescission, and in some other cases, the real amount of consideration paid may be inquired into, when necessary to ascertain the sums to be refunded. But when a consideration is expressed in the deed, it universally prevents the raising of a'use in the grantor, and estops him from every such claim. The title passes as effectually as if every dollar of the expressed consideration were in fact paid..

Objection is made that the trustee was improperly held accountable for certain notes, the beneficiaries' title to which was shown by recorded conveyances, without proof of actual delivery to the *cestuis que trust*. The requirement of manual delivery in order to a transfer of personalty is always subject to such modifications as may be exacted by the situation of the property or of the parties. The beneficiaries were infants, and Charles Bobb was their natural guardian. There could be no good reason for placing the notes in the hands of the infants. The delivery by Hannah Letcher to their guardian and trustee was a delivery to them. As to the notes transferred by Charles Bobb to his children, his possession of them as self-appointed trustee and guardian was the only practical assertion possible of the wards' beneficial dominion over the property.

Some other questions are raised upon the record, but the most of them are subordinate to those already disposed of, whose solution practically determines the former also. The remainder depend chiefly on the facts proved before the referee. The testimony, which is said to cover more than five thousand pages, is not preserved in this record, and every presumption must therefore be in favor of the finding of the referee and the Circuit Court's affirmance thereof. To this class belongs the question upon the computation of interest with annual rests. To justify such a computation, there must have been not merely a neglect to account,

but a wilful breach of duty, and an accumulation of profits in the hands of the trustee greater than the results of simple interest merely, and appropriated to his own use. Perry on Trusts says, citing numerous authorities : " It appears now to be the settled doctrine that compound interest will not be given as a penalty for a breach of trust, nor will it be given for an employment of the money in the course of trade, if the profits made in the trade can be clearly ascertained, and are less than the legal interest, etc. * * * And if the interest or profits of the fund are retained in the trade, instead of being paid out, it will be presumed that the trustees made a similar rate of interest or profit upon the sum retained in trade, and therefore annual rests will be made and compound interest given, not as punishment or penalty, but because the fund and the income employed in trade are presumed to produce that amount of interest, income, or profit." 1 Perry on Tr., sect. 471. It may be true, as defendants' counsel insist, that there was no authority for directing compound interest by way of penalty for anything done or omitted by the trustee ; and yet there may have been facts proved before the referee which would entitle the beneficiaries to compound interest against the trustee, upon the principles just quoted. The first referee says, in his report : " That during all this time the trustee had the sole control of these funds, realizing upon funds under his control, as the testimony shows, interest at times largely in excess of the highest rate of interest at which this account, under the decree of the court, can be computed." As the testimony is not before us, we cannot say that the trustee's profits upon the funds, with the excessive rates of interest collected, were not sufficiently large to demand a computation of compound interest against him. The final decree of the Circuit Court establishes a presumption the other way. The judgment will be affirmed. All the judges concur.