ALPHA ROBERTS, Respondent, *v.* ALANSON DERBY, Appellant.

*Reformation of a written contract — damages for a breach — an equitable action cannot be changed into one at law.*

To entitle one party to a written contract to a reformation thereof by the insertion of an additional provision, he must prove, by a preponderance of clear and satisfactory evidence, that the defendant not only agreed to the subject-matter of the provision sought to be inserted, but that it was agreed that it should be incorporated into the written contract, and that by the mutual mistake of the parties it was omitted therefrom.

When a party has elected to bring an equitable action for the reformation of a written contract and for damages for a breach thereof as reformed, and has recovered a judgment accordingly, he cannot, on appeal, claim to convert the action into one at law, and in case it is decided that he was not entitled to a reformation of the contract, obtain an affirmance on the ground that he was entitled to recover as in an action for damages for breach of a parol agreement.

APPEAL by the defendant, Alanson Derby, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of Cattaraugus county on the 5th day of May, 1892, upon the report of a referee.

*Fred J. Blackman,* for the appellant.

*J. M. Congdon,* for the respondent.

LEWIS, J. :

This action was brought to obtain reformation of a written contract, and damages for a breach thereof as reformed.

The learned referee to whom the action was referred found that by the mutual mistake of the parties the contract failed to express

their actual agreement, and he directed judgment for the plaintiff reforming the contract, and for damages for the breach thereof; and the question presented for our decision is, whether the evidence sustains his findings.

The defendant Derby was the owner of a farm in the town of Persia, Cattaraugus county, on which was a considerable quantity of hemlock and other timber. He purchased the farm of Franklin D. Locke, of Buffalo, and Mr. Locke held a purchase-money mortgage thereon of $1,900.

The defendant was desirous of selling the timber on the farm with a view of applying the money obtained therefrom in part payment of the Locke mortgage.

Plaintiff owned a portable steam sawmill, and wished to purchase the timber for the purpose of converting it into lumber and marketing it. Negotiations were had between the parties, which resulted in a verbal agreement for the sale of the timber to the plaintiff for the sum of $1,000.

Plaintiff testified that while negotiating for the purchase of the timber, he stated to the defendant that he knew what the labor of converting the timber into lumber and marketing it would cost, with the exception of the cost of skidding the logs to the mill, and that the defendant thereupon said that he would do or cause to be done that part of the labor for one dollar per thousand, and that he told defendant if he purchased the timber he should have the job of skidding the logs.

Plaintiff further testified that he was to have a week's time to determine if he would make the purchase, and that at the end of the week he informed the defendant that he would take the timber, and that they agreed to go to Buffalo and see Mr. Locke, and arrange the terms of the contract, and have Mr. Locke put it in writing, and that they met Mr. Locke, and Derby stated to him the bargain, and all about it, and that Mr. Locke drew the contract, and read it over to the parties, and they executed it. No mention was made in the contract about skidding the logs.

Plaintiff claims that by the mutual mistake of the parties that part of the agreement was omitted from the written contract.

The plaintiff and his hired man, McMillan, testified that the defendant agreed to skid the logs for one dollar per thousand.

. The defendant admitted that he told the plaintiff during the negotiations that he thought the work could be done for a dollar a thousand, but that he was so busy with other work that he could not do it, but would assist the plaintiff in finding some one to do the work, but he denied that he agreed to do the work.

The facts and circumstances tend to a considerable extent to corroborate the defendant's contention.

Concededly nothing was said about skidding the logs to Mr. Locke.

The contract contains everything Mr. Locke was told to put in it. It bears date on the 20th day of May, 1890, and provides that Mr. Derby, party of the first part, shall proceed with reasonable diligence to fell all the hemlock timber upon the premises which is fit for cutting into timber, and shall peel the bark therefrom, which he reserves to himself; that Roberts, party of the second part, shall forthwith erect upon the premises a steam sawmill, and with due diligence proceed in the work of sawing into lumber and timber all the hemlock and other timber upon the premises aside from the beech and maple ; that as rapidly as the timber is sawn it shall be marketed by the plaintiff as the agent of the defendant, and that out of the purchase money the plaintiff may retain three dollars per thousand feet, and pay the remainder to Mr. Locke to be applied upon the mortgage until the sum of $1,000 and interest thereon from that date is paid, that the surplus received from the timber shall belong to the plaintiff.

It is further provided that the title to the timber and lumber shall remain in the defendant until the $1,000 are fully paid ; it contains other provisions carefully guarding the defendant against loss from the inability of the plaintiff to pay for the timber.

The plaintiff is required to commence operations by the 10th day of July, 1890, and complete the work of marketing the lumber and timber by the 1st of February, 1891.

Skidding the logs at one dollar per thousand would have amounted to $500 or $600. Plaintiff testified that nothing was said as to how or when he was to pay the defendant for his labor for skidding the logs.

After having so carefully protected the defendant in the written agreement against loss by plaintiff's failure to pay for the timber, it

is a significant fact, if such an agreement was made, that the terms of payment for the work were not mentioned.

If plaintiff's version of the contract is correct, the defendant was obligated to do the work and wait for his pay until the job was entirely completed. The record shows that plaintiff was pecuniarily irresponsible.

Plaintiff testified that on their way home from Buffalo after executing the contract, he and defendant had a conversation about skidding the logs, and defendant said he would not do the work for three dollars a thousand, for the reason that he had so much other work to do, and that he would have to give up the job; that he told Derby he supposed he had the job.

No suggestion was made by the plaintiff that the agreement for skidding the logs had been by mistake left out of the written contract, and there is not in the entire case any direct evidence that it was ever agreed or suggested that that part of the agreement was to be included in the written contract. It could properly have been put in the writing, or allowed to rest in parol.

The contract obligated Derby to fell the trees and strip the bark.

It is quite remarkable, if the plaintiff understood that the agreement to skid the logs was to be included in the contract, that he did not suggest it to Mr. Locke when he heard the clause read requiring defendant to fell the trees and strip the bark

If he is right in his contention he was at liberty to refuse to perform the contract when Derby informed him that he would not do as he had agreed; and instead of so doing, very shortly after signing the contract, he entered into negotiations with other people to do that work, and finally agreed to pay one dollar and fifty cents to one dollar and eighty-five cents a thousand therefor.

He testified that when he was negotiating with some parties to skid the logs, the defendant was present, and that he called him one side, and privately inquired of him if he intended to do that work, and that defendant refused (this interview was denied by the defendant), and that thereupon he let the contract to another, without making any complaint, or suggesting that the defendant had made such an agreement and refused to perform it.

Plaintiff testified that the defendant admitted he had agreed to do the work, but gave as an excuse for not performing that he supposed

when he agreed so to do, that the work could be done through the following winter; that he did not suppose the plaintiff was to saw the timber so soon; and yet at the time this admission was alleged to have been made they both knew that the contract required the plaintiff to commence doing the work by the tenth of July, and to have it completed by the first day of February.

To entitle the plaintiff to a judgment reforming this written instrument, it was incumbent upon him to prove by a preponderance of clear and satisfactory evidence, that the defendant not only agreed to do the work, but that it was agreed it should be incorporated into the written contract, and that by the mutual mistake of the parties it was omitted therefrom.

A person who seeks to rectify a deed on the ground of mistake, must establish in the clearest and most satisfactory manner that the alleged intention to which he desires it to be made conformable continued concurrently in the minds of all parties down to the time of its execution, and also must be able to show exactly and precisely the form to which the deed ought to be brought. (Bispham's Principles of Equity, § 469; *Stockbridge Iron Co.* v. *Hudson Iron Company*, 107 Mass. 290.)

We think the plaintiff came far short of making such a case; on the contrary, the preponderance of the evidence tended to establish the defendant's contention.

The plaintiff elected to bring an equitable action for the reformation of this contract, and it was tried as such. It is too late upon appeal to seek to convert it into a law action.

Although the distinctions between actions at law and suits in equity are abolished, the distinguishing features of the two classes of remedies, legal and equitable, are as clearly marked and rigidly observed as they ever were. (*Chipman* v. *Montgomery*, 63 N.Y. 230.)

If a party brings an equitable action when the same court administers both systems, he must maintain his action upon equitable grounds or fail, even though he has a good action at law on the trial. (*Mann* v. *Fairchild*, 2 Keyes, 111; *Bockes* v. *Lansing*, 74 N.Y. 437; *Oakville Co.* v. *The Double-Pointed Tack Co.*, 105 id. 658.)

Had the plaintiff brought his action to recover damages for the breach of a parol agreement, the defendant would have been entitled to a jury trial.

The judgment appealed from should be reversed and a new trial granted, with costs to abide the final award of costs.

All concurred.

Judgment appealed from reversed and a new trial granted, with. costs to abide the final award of costs.