---

DAVIDSON et al. v. MAYHEW et al., Appellants.

### Division One, June 18, 1902.

1. **Title to Land:** RES ADJUDICATA. Where the facts and title are essentially different from those on the former trial, and thereby different principles of law are made applicable to the two cases, the first decision is not *res adjudicata.*

2. ————: CORRECTING DEED: KNOWLEDGE DURING GRANTOR'S LIFE: LACHES. Plaintiffs having a deed from their father in their possession for nearly thirty years prior to his death, and for more than fifteen years actual knowledge that it did not describe the land in suit, after his death first brought ejectment claiming as remaindermen, and failing in that, brought this suit to set aside the deed, although they had asked him while yet living to correct it, to which request he had replied that there was no mistake. *Held,* that their laches bar their claim. The maxim, "the law aids the vigilant, not the sleeping," closes the door of equity to their claim.

3. ————: ————: NO MISTAKE: TWO LIFE ESTATES: CONFIRMATION. The owner of land, about to separate from his wife, conveyed to her eighty acres for life, but did not dispose of the fee, but wrongfully described one of the forties, and conveyed to his children by her, 287 acres, reserving to himself a life estate therein, but wrongfully included therein the one forty which he had by correct description conveyed to his wife, and this eighty he long afterwards conveyed to his children by a second wife. *Held,* that, manifestly, he did not intend to include the second forty in the deed to the

Davidson v. Mayhew.

first set of children, for in the deed to them he reserved a life estate to himself, while, in the deed to the eighty he conveyed a life estate in that forty to his wife. *And*, the fact that he afterwards conveyed the fee of the eighty to his second set of children and stated therein that it was subject to the life estate to the first wife, confirms the conclusion that he did not intend to convey to the children of the first wife the fee to this forty included in their deed.

4. ————: LACHES: FAILURE TO INTERPOSE EQUITABLE DEFENSE IN EJECTMENT. Where defendant failed in a former ejectment to set up the equitable defense that the deed under which plaintiff claimed wrongfully, by mistake, included the land sued for, and because of that failure judgment went against him, he can not in a subsequent equity suit by the same plaintiff, to' reform the deed as to other lands, by way of counterclaim, have the deed reformed. Had he interposed that defense and prayer in that case, he would, under his counterclaim, be entitled to relief; but having failed to do so, he is barred because of laches. And this will be the ruling although it is clear that the land which plaintiff recovered in the former ejectment was by mistake included in the deed upon which his action was based.

Appeal from Lawrence Circuit Court.—*Hon. H. C. Pepper,* Judge.

REVERSED AND JUDGMENT HERE.

*Joseph French and D. S. Mayhew* for appellants.

In suits in equity, the appellate court is not bound to follow the findings of the trial court, but where the evidence is all before the appellate court, it will review such evidence and arrive at its own conclusions upon the facts. Courtney v. Blackwell, 150 Mo. 245; Parker v. Vanhoozer, 142 Mo. 621. There was no such evidence given in this case, on the part of plaintiffs, as would, under the rules of law and the unbroken line of decisions, warrant the court in holding that there was a mistake in the deed, as set forth in the plaintiffs' petition. Courts of equity will correct deeds which have been erroneously made, but the evidence that there has been a mistake must be clear and convincing. Such mistake must

have been a mutual mistake between grantor and grantee, and this must be shown by the most clear evidence. Parker v. Vanhoozer, supra; Tesson v. Ins. Co., 40 Mo. 33; State ex rel. v. Administrator, 51 Mo. 98; Sweet v. Owens, 109 Mo. 1; Bartlett v. Brown, 121 Mo. 353; Clark v. Railroad, 127 Mo. 255. To grant the relief sought in this case by the respondents would be to encourage the most culpable negligence. As to the condition of the appellants, as set forth in their answers, while their claim must be governed by the same law as that of respondents, yet the testimony is very clear that the only mistake that was made by A. J. Davidson in the making of deeds that affect this case, was the mistake in inserting in his deed to the heirs in 1866 the northeast quarter of southeast quarter of section fifteen, which he had just deeded to his wife.

*R. H. Landrum* and *Henry Brumback* for respondents.

The finding of the court is sustained by the evidence. In 1866 Andrew J. Davidson and his wife, Charlotte, were separating and called in three of their friends to aid in adjusting their property interests. It is unquestioned, from all the evidence, that the agreement made, and by the two deeds attempted to be executed, was that Andrew should give Charlotte an estate for life in the certain eighty acres of his land, and reserve to himself a life estate in the remaining two hundred and seven acres of his land, and, subject to these life estates, should convey all his land to their six children. The writer of the deeds, beyond question, by accident, in the deed to the children, omitted the description of several parcels, including the forty acres now in contest, and included a description of several parcels that Andrew did not then or ever own. What the agreement and the undertaking were is proved beyond doubt; and that these errors occurred is likewise clear beyond a doubt.

MARSHALL, J.—This is a bill in equity to divest title out of the defendants and vest it in the plaintiffs, and for a partition of the land among the plaintiffs. The land in dispute is the southeast quarter of the southeast quarter of section 15, township 27, range 27, in Lawrence county. The plaintiffs and defendants are half-sisters and brothers. The plaintiffs being the children of Andrew J. Davidson and his first wife Charlotte, and the defendants being the children of Andrew J. Davidson and his second wife Matilda.

In 1866, Andrew J. Davidson owned three hundred and sixty-seven acres of land, lying contiguous, in sections 15 and 16 of township 27, range 27, Lawrence county. Andrew and his wife Charlotte disagreed and in anticipation of a divorce, which was afterwards obtained, they called in three friends to arrange a settlement of the property. The result was, on September 19, 1866, Andrew conveyed to Charlotte an estate for life in the northeast quarter of the southeast quarter, and in the southeast quarter of the southeast quarter of section 15, containing eighty acres. On the same day, Andrew conveyed to the six living children of his first marriage, the fee to the following described property, reserving, however, to himself a life estate therein, to-wit: the southeast quarter of the southeast quarter of section 16, containing forty acres; also the southeast quarter of the southeast quarter of section 16 (this is a repetition of the land first described); also the northeast quarter of southwest quarter of section 15; also the northwest quarter of southwest quarter of section 15; also the northeast quarter of the southeast quarter of section 15 (this was the first forty conveyed to his wife for life); also the northwest quarter of the northeast quarter of section 15 (he never owned this); also the northwest quarter of the northwest quarter of section 15 (he never owned this); also seven acres on south side of southeast quarter of northeast quarter of section 16; containing in all 287 acres.

At that time he owned the following described land in sections 15 and 16, lying contiguous to the land described in the deed to the children: the northwest quarter of the southeast quarter and the southwest quarter of the northeast quarter and the southwest quarter of section 15, and the northeast quarter of the southeast quarter of section 16. These four forties he afterwards sold to other persons during his lifetime. Thus it will be observed that he conveyed to his children two forties he did not own—the northwest quarter of the northeast quarter and the northwest quarter of the northeast quarter of section 15—and that he did not convey to them the four forties above described that he did own; and that he described, in their deed, the southeast quarter of the southeast quarter of section 16, twice; and that he included in their deed the northeast quarter of the southeast quarter of section 15, which he had conveyed to his wife for life, and did not include in their deed the southeast quarter of the southeast quarter of section 15, which he had conveyed to his wife for life. All this property lies in Spring River prairie.

After making these deeds and after the divorce, Andrew married his second wife Matilda, and purchased a tract of 113 acres in section 19, township 26, range 27, in Lawrence county, lying in Brite's prairie, and established his new home there. Two children (the defendants) were born of this second marriage, and on May 31, 1894, Andrew and Matilda, his wife, conveyed to them the one hundred and thirteen acres aforesaid, reserving, however, a life estate to themselves therein, and also conveyed to them eighty acres (being the northeast quarter of and the southeast quarter of the southeast quarter of section 15) that Andrew had conveyed in 1866 to his first wife Charlotte for life, subject, however, to Charlotte's life estate.

After the divorce, Charlotte also remarried, but had no children by that marriage. In February, 1895, Charlotte

died, and in May, 1895, Andrew died. Thereupon the children of the first marriage, the plaintiffs herein, brought suit in ejectment against the children of the second marriage, the defendants herein, to recover the eighty acres (being the northeast quarter and the southeast quarter of the southeast.quarter of section 15) that their father had conveyed to Charlotte, his first wife, when the separation occurred. Their claim was that as the deed to Charlotte conveyed the property "to her and her heirs and assigns," the habendum clause being to have and to hold to her, "her heirs and assigns, in fee simple, *her natural life,* to her own proper use and behoof," the legal effect was to create a life estate in Charlotte and a remainder in fee in the plaintiffs, they being her heirs. The circuit court. adopted this view and entered judgment in their favor, but on appeal by the defendants this court reversed that judgment, and held that the deed to Charlotte created only a life estate in her, and the fee, subject to such life estate, remained in Andrew, and as he conveyed the fee, subject to the life estate in Charlotte, to the defendants, his children by the second marriage, they were the owners and entitled, after the death of Charlotte, to the possession of the whole of such eighty acres. [Davidson v. Manson, 146 Mo. 608.]

After this decision of this court, these plaintiffs brought suit in equity against these defendants, to the February term, 1899, to set aside the deed of May 31, 1894, from Andrew and wife Matilda to the defendants, for the eighty acres and for the one hundred and thirteen. acres, claiming that Andrew was not of sound mind when he made that deed. This suit was afterwards dismissed.

The plaintiffs also instituted another action in ejectment against the defendants for the recovery of the eighty acres aforesaid conveyed to Charlotte for life, returnable to the February term, 1899. In this action the plaintiffs did not claim as remaindermen in fee under the deed from

Andrew to Charlotte, as they had done in the first ejectment case, but they claimed the northeast quarter of the southeast quarter of section 15, being one of the forties conveyed by Andrew to Charlotte for life, and afterwards conveyed by Andrew to the defendants by the deed of May 31, 1894, by virtue of the deed from Andrew to the plaintiffs dated September 19, 1866, the original deed to the children of the first marriage. The circuit court gave them judgment for that forty, and the defendants did not appeal. Having thus obtained possession of the northeast quarter of the southeast quarter of section 15, one of the forties so long in dispute, the plaintiffs began this suit in equity, returnable to the September term, 1899, to have the deed of May 31, 1894, to the defendants, to the southeast quarter of the southeast quarter of section 15 (being the remaining forty of the eighty acres conveyed by Andrew to Charlotte in 1866) set aside, and to vest the title in the plaintiffs, and to partition the land. The relief is asked on the ground that Andrew intended by his deed to the children of his first marriage to convey the southeast quarter of the southeast quarter of section 15, but that instead of doing so he described the southeast quarter of the southeast quarter of section 16, *twice*. The answer denies this claim, and, by way of a Roland for the plaintiffs' Oliver, claims that Andrew made a clerical error and mistake in the deed to the plaintiffs by describing therein the northeast quarter of the southeast quarter of section 15 (the north forty conveyed to Charlotte for life), when he intended to convey to the plaintiffs the northeast quarter of the southeast quarter of section 16. In other words, the plaintiffs claim that their father conveyed to them the north forty of the southeast quarter of section 15, and intended to convey to them also the south forty of the southeast quarter of section 15 (being the whole eighty conveyed to their mother, Charlotte, for life), and the defendants claim that their father did not intend to convey any

part of that eighty to the plaintiffs. The defendants, therefore, embody a cross-claim in their answer, and ask to have the northeast quarter of the southeast quarter of section 15 eliminated from the deed of their father to the plaintiffs, and that the title thereto and the possession thereof be adjudged to them by virtue of their father's deed to them dated May 31, 1894. The circuit court entered judgment for the plaintiffs as prayed, and defendants appealed. The evidence will be noticed in the course of the opinion.

I.

This is the second appearance of this family quarrel in this court. When the matter was here before this court held that the plaintiffs were not entitled to the eighty acres conveyed by Andrew to Charlotte for life, on September 19, 1866, but that the defendants were seized of the fee thereto by virtue of the deed from Andrew to them, dated May 31, 1894. [Davidson v. Manson, 146 Mo. 608.] That decision is not *res adjudicata* of this case, because the facts presented by this record and the title now asserted by the plaintiffs, are essentially different from the facts presented on former appeal and the principles of law then and now applicable are equally different.

Since the former decision of this court awarding the whole eighty acres to the defendants, the plaintiffs have recovered a judgment, in ejectment, against the defendants for the north forty of said eighty acres, and the defendants have abided by that judgment. This was recovered, not upon the title asserted by the plaintiffs in the first case, to-wit, as remaindermen under the deed from Andrew to Charlotte, but under the deed from Andrew to the plaintiffs which described the said north forty. It will be noted that no such claim or title was asserted or brought to the attention of the court in the first case. This was not the result of

oversight, however, because the evidence discloses that for over twenty years, and long before their father's death, the plaintiffs have known that the deed from their father to them of September 19, 1866, did not cover four forties of the land in Spring River prairie owned by him, and that it covered two forties (the northwest quarter of the northwest quarter and the northwest quarter of the northeast quarter of section 15) that their father never owned, and also that it purported to convey the northeast quarter of the southeast quarter of section 15, and described the southeast quarter of the southeast quarter of section 16, twice, and did not refer to the land in controversy here, the southeast quarter of the southeast quarter of section 15 at all. Without disclosing the whole of their claim or title in the first case, the plaintiffs took the chances of recovering the whole eighty in that case upon the theory that they were remainder-men, failing in that, they recovered the northeast quarter of the southeast quarter of section 15, by virtue of the deed from their father to them which covered that forty, and they now ask a court of equity to aid them to recover the other forty by reforming and correcting the deed from their father to them made on September 19, 1866, when for at least fifteen years before their father's death, in 1895, they had actual knowledge of the error or mistake now claimed in his deed to them (they have had possession of the deed and, therefore, constructive notice of its terms ever since 1866), and they never brought suit to have that error corrected until more than four years after their father's death, nor until they had failed in their first suit, nor until after they had asserted title to the north forty under the deed they now claim contained this error and ousted the defendants therefrom. There is substantial evidence that in 1890, when their father was sick and not expected to live, the plaintiffs tried to force him to compel the defendants to give them a quitclaim deed to the whole eighty

acres, saying there was a mistake in the deed from their father to them the plaintiffs, and that their father refused to do so, and said there was no mistake in the deed to them and told the defendants not to execute the quitclaim deed and not to sign anything.

The wholesome maxim, intended to insure the peace and repose of society, *"vigilantibus, non dormientibus, subvenient leges,"* closes the doors of a court of equity to the plaintiffs' claim. It has been aptly said that, "only conscience, good faith, and reasonable diligence can call a court of equity into activity, and that stale demands will not be aided where a party has slept upon his rights and acquiesced for a great length of time." [18 Am. and Eng. Ency. Law (2 Ed.), p. 97.]

For thirty-three years the plaintiffs knew, constructively, of the alleged mistake in the deed that they now ask a court of equity to correct. For over twenty years they had actual knowledge of all they now assert. Yet it was not until the seal of death had been placed upon their father's lips, nor until they had exhausted every other theory and device to dispossess the defendants from the land in question, that they asked the aid of a court of equity. When their father was still alive they asked him to cause the alleged mistake to be corrected and he refused the request. According to some of the testimony in the case, he lived nearly five years thereafter. At any rate, as long as he lived they did not invoke the aid of the court. Their laches now bars their claim.

But aside from this consideration, the evidence does not support the plaintiffs' claim that their father intended to convey to them the eighty acres conveyed to their mother for life. On the contrary, the sum of the evidence and the physical facts and circumstances clearly show that Andrew never intended to convey to the plaintiffs any part of or interest in the eighty acres conveyed to Charlotte, and that

instead of there being a mistake in the deed from Andrew to them in not conveying the land in question, to-wit, the southeast quarter of the southeast quarter of section 15, there was a mistake in that deed, in that, it described the northeast quarter of the southeast quarter of section 15, when it intended to convey the northeast quarter of the southeast quarter of section 16, and the result is that the plaintiffs have already recovered, in the second ejectment suit, forty acres, to-wit, the northeast quarter of the southeast quarter of section 15, to which they were not entitled in equity.

The substance of the testimony for the plaintiffs is that when Andrew and his wife Charlotte disagreed and called in the three friends to arrange a settlement of the property, it was agreed that Andrew should convey the eighty acres to Charlotte for life, and the rest of his property should be conveyed to their children in fee subject to a reserved life estate therein in Andrew. This arrangement was carried out, and the deed from Andrew to his children describes the land conveyed as 287 acres, and reserves a life estate in Andrew. The deed from Andrew to Charlotte created a life estate in her in the eighty acres. Thus Andrew carved out a life estate for his wife in eighty acres, a life estate for himself in two hundred and eighty-seven acres, and a fee to their children in the two hundred and eighty-seven acres. In this way he disposed of his whole three hundred and sixty-seven acres, except the fee of the eighty acres after the termination of his wife's life estate therein. This he conveyed to the defendants, his two daughters by his second marriage, in 1894.

It is too plain for debate that Andrew did not intend to convey to his children by his first marriage any part of or interest in the eighty acres conveyed to his wife for life, and that so far from it being a mistake not to include the southeast quarter of the southeast quarter of section 15, it was a mistake to insert in the deed to his children the

northeast quarter of the southeast quarter of section 15 and
that the northeast quarter of the southeast quarter of section
16 was intended.    There is one fact shown by the documen-
tary evidence in this case that establishes this to be true,
and that is that in the deed to his children, the plaintiffs,
Andrew reserved a life estate for himself in the land con-
veyed, which that deed describes as containing 287 acres.
Manifestly this could not have been intended to cover any
part of the eighty acres conveyed at the same time to his
wife Charlotte, for this reason: a life estate had just been
carved out of the eighty acres for his wife Charlotte.   So
that it was impossible that Andrew could have intended to
carve out a life estate for himself also in the eighty acres.
The life estate reserved by Andrew in his deed to his chil-
drn could only apply to the 287 acres not conveyed to his
wife for life, and as Andrew reserved a life estate to himself
in all the land he conveyed to his children, it follows that
as he could not retain a life estate in the eighty acres which
he simultaneously conveyed to his wife for her life, he did
not convey or intend to convey the fee to the eighty acres
to his children subject to a life estate in himself.   The fact
that Andrew afterwards conveyed the fee to the eighty acres
to the defendants and expressly stated in that deed that it
was subject to Charlotte's life estate, confirms the correctness
of the conclusion that he did not intend by his deed to his
children, the plaintiffs, in 1866, to convey the fee to the
eighty acres to the plaintiffs subject to Charlotte's life es-
tate.

Without further demonstration or analysis of the testi-
mony, the conclusion is irresistible that the judgment of the
circuit court is erroneous, and that Andrew J. Davidson did
not intend to convey any part of the southeast quarter of
the southeast quarter of section 15 to his children by the
first marriage, but that he did convey the same and intended

to convey the same to his children by the second marriage, the defendants herein.

The fact that in his deed to the children of the first marriage Andrew included two forties he never owned and omitted four forties he actually owned, and which he afterwards sold, does not alter this conclusion. For the plaintiffs knew for over fifteen years before Andrew died that the four forties were omitted, and if they had desired to correct the mistakes in those respects they should have brought suit against Andrew during his lifetime and have forced him to correct those mistakes and to live up to the arrangement he made with Charlotte when they separated. Both he and Charlotte were then alive and could have been heard. The fact that there was an existing life estate in each tract would not have barred such a suit.

Moreover, it is worthy of note that the deed from Andrew to the defendants for the fee in the eighty acres conveyed to Charlotte for life, was made on May 31, 1894. Charlotte was then alive. She died in February, 1895, and Andrew died in May, 1895. So that the fee to the eighty acres was conveyed to the defendants nine months before Charlotte died and a year before Andrew died. If any just reason could have been given which made it inequitable, unconscionable or wrong for Andrew to convey that fee to the defendants, that reason should have been given while Charlotte and Andrew were alive. Death has sealed their lips and the courts will seal those of their children. If Andrew defrauded his children by including in the deed to them two forties he did not own, and by omitting, and afterwards selling, four forties he did own, this does not authorize a court of chancery, at the instance of those who have slept for thirty-three years on their rights, to remedy that wrong by taking away two forties that Andrew never intended to give the plaintiffs, from the defendants to whom Andrew did give them, and giving them to the plain-

tiffs in *pro tanto* compensation for the four forties they should have gotten.

But while the judgment for the plaintiffs must be reversed as to the southeast quarter of the southeast quarter of section 15, it does not follow that it would be equitable to grant the cross-prayer of the defendants, and award to them the north forty, being the northeast quarter of the southeast quarter of section 15 that the plaintiffs recovered from the defendants in the second ejectment suit in February, 1899. The defendants acquiesced in that judgment, instead of asserting in that case the equitable matters set up in this case, to-wit, that the including in the deed to the plaintiffs of the northeast quarter of the southeast quarter of section 15 was a mistake, and that instead thereof, the northeast quarter of the southeast quarter of section 16 was intended. If such defense and prayer for relief had been interposed by defendants in that case, they would have been entitled to the relief they now ask, but it is now too late. The same maxim of equity that bars the plaintiffs' claim because of laches, also bars the claim of the defendants to the said north forty.

The judgment of the circuit court is therefore reversed, and judgment entered here for the defendants Martha B. Mayhew and Mary F. Davidson as to the southeast quarter of the southeast quarter of section 15 aforesaid. All concur.