WATSON *et al. v.* OWEN.*

(Division B.    April 19, 1926.)

[107 So. 865.   No. 25606.]

1. REFORMATION OF INSTRUMENTS. *Agreement of children to divide money coming to father's estate would not be reformed as for mutual mistake to include sum received by one party in settlement of claim against deceased relative's estate, by virtue of father's relationship, where evidence showed agreement included only cotton claims of father's estate against government.*

   Agreement between children to divide equally any money that might come to father's estate, would not be reformed as for mutual mistake to include sum received by one of parties in settlement of claim against estate of deceased relative, by virtue of father's relationship, where the evidence showed that agreement was intended only as to money expected to come to father's estate from certain cotton claims against United States government.

2. APPEAL AND ERROR.

   Decree of chancellor refusing to reform written instrument will not be disturbed on appeal, where appellants failed to meet burden of proof required by law.

3. REFORMATION OF INSTRUMENTS.

   The party who seeks to reform a written instrument has burden of proving mutual mistake beyond reasonable doubt.

4. REFORMATION OF INSTRUMENTS.

   Burden of proof required to reform written instrument grows heavier on complainant by lapse of time before seeking reformation.

5. DESCENT AND DISTRIBUTION. *Written agreement of children to share money coming to father's estate did not entitle heirs of deceased parties to agreement to share of money received by one party from her aunt's estate, though acquired as descendent of father; father having died before aunt.*

Written agreement of children to divide equally any money that should come to father's estate *held* not to entitle heirs of deceased parties to agreement to division of money received by one of parties as settlement of claim against her aunt's estate, though money was acquired as descendant of father; father having died before aunt.

*Corpus Juris-Cyc. References: Appeal and Error, 4 C. J., p. 900, n. 97. Descent and Distribution, 18 C. J., p. 888, n. 85. Reformation of Instruments, 34 Cyc., p. 980, n. 4; p. 984, n. 33; p. 987, n. 36; p. 990, n. 54. Burden of proof in action to reform written instrument; 23 R. C. L. 365.

APPEAL from chancery court of Lowndes county.

Hon. T. P. GUYTON, Chancellor.

Suit by T. C. Watson and others against Mrs. Tennessee Watson Owen. From a decree denying relief, and dismissing the bill, complainants appeal. Affirmed.

*Paine & Paine,* for appellants.

I. Appellants are entitled to a decree compelling appellee to disgorge the shares of this one hundred twenty-six thousand six hundred thirty-three dollars and seventy-five cents, equitably and justly due appellants, and this is true for the reason that Exhibit E, even without reformation, entitles appellants to their share of this money received by appellee as a descendant of Asa Watson. It clearly says that appellee and the forbears of appellants agreed to share equally any money that might come to the estate of their father, Asa Watson. Appellee contends that this was meant to apply only to money received from the United States Government on a cotton claim, but this construction contended for by appellee contradicts the very plain wording of the instrument. We submit that this instrument is not to be

so construed, but it is not necessarily ambiguous, and the court in construing it, need only look to the four corners of it. Appellants ask only that to which they are entitled in equity and good conscience.

What was the intention of appellee and H. D. and Wheeler Watson and Mrs. Julia Manning when they executed Exhibit E? Exhibit E, used the expression ''divide equally among ourselves any money that may come to the estate of our father, Asa Watson.'' It could only mean, and was meant and understood by all of the signers thereto, that they would divide any money which would come to them or any of them as descendants of Asa Watson and due to their relationship to Asa Watson.

It is a policy of the law and our courts to look with favor upon family agreements and settlements, and our courts have always been prone to uphold such family settlements. But we submit that 'the chancellor disregarded and overlooked the equities of appellants and, therefore, erred in dismissing the bill.

II. Looking at the case from another angle, the court will see from the sworn answer of appellee and from her testimony that she contends that Exhibit E, referred only to money to be received from cotton claims against the United States Government, but Exhibit E, does not mention cotton claims; and to that extent, under the testimony and contention of appellee, Exhibit E, would be ambiguous and, therefore, parol evidence would be competent to show what was actually intended. See 22 C. J., ''Evidence,'' secs. 1715-1720; also secs. 1571-1573 and secs. 1586-1590; *Shackleford* v. *Hooker,* 54 Miss. 716.

III. As to the right of appellants to a reformation of Exhibit E: One of the fundamental grounds of equity jurisdiction is to grant relief and reformation of writ-

ten instruments on account of mutual mistake of facts, whether the contract is executed or executory. See *Dunbar* v. *Newman,* 46 Miss. 235; *Mills* v. *Mills,* 84 Miss. 624-637-640; *Ingram-Day Lumber Co.* v. *Robertson,* 129 Miss. 385; Pomeroy's Equity Jurisdiction (Student's Ed.), sec. 845, p. 418; *Snell* v. *Remington Paper Co.,* 198 N. Y. 922; *Williams* v. *Hamilton,* notes, 65 A. S. R. 482, 483, 487, 488, 489, and 492; *Brimm* v. *McGee,* 119 Miss. 52.

And parol evidence is admissible to reform a voluntarily adopted written instrument upon the ground of mutual mistake. See Pomeroy's Equity Jurisdiction (Student's Ed.), pp. 430 and 431; *Williams* v. *Hamilton,* notes, 65 A. S. R. 521.

Especially is this true with reference to a family settlement. In which event, there is no necessity for a valuable consideration, and a voluntary settlement without such valuable consideration may be reformed. See *Spencer* v. *Spencer,* 115 Miss. 71.

The assignments of expectancies by family settlements are valid. 5 C. J., p. 862, especially p. 868, sec. 25 (3); *Hunt* v. *Smith,* notes, 17 A. L. R. 601; *Spencer* v. *Spencer,* 115 Miss. 71; *Field* v. *Camp,* 201 Fed. 682; 125 Atl. (N. J.) 582.

The appellants, descendants of H. D. and Wheeler Watson and Mrs. Julia Watson Manning, are entitled to reformation against appellee as they are in privity with their father and their aunt, Mrs. Manning. See 23 R. C. L. 339, sec. 33; *Williams* v. *Hamilton,* 65 A. S. R., notes, 504; *Dunbar* v. *Newman,* 46 Miss. 231.

Counsel for appellee cite a number of authorities to the effect that before a court will order a reformation the rule requires that the evidence be "clear, convincing, and satisfactory." But in answer to this part of their brief we reply that this rule does not necessarily preclude relief because the evidence is conflicting. *Hutchinson* v. *Ainsworth,* 2 A. S. R. 823; *Williams* v. *Hamilton,* notes, 65 A. S. R. 495.

Counsel for appellee also contend that appellants are barred of any rights in this case by laches and by their

negligence. We submit that laches, short of the statute of limitations, does not bar their right. 23 R. C. L. 352; *Williams* v. *Hamilton*, notes, 65 A. S. R. 504. Negligence is no bar to reformation. *Brimm* v. *McGee*, 119 Miss. 52.

*Owen & Garnett,* for appellee.

I. We submit that a court will not reform a written instrument for mistake unless the mistake was mutual, and that it was mutual must be shown without a doubt. Chief Justice SHARKEY, in *Harrington* v. *Harrington*, 2 How. 701, 718; Justice CLAYTON in *Lauderdale* v. *Hallock*, 7 S. & M. 629; Justice TRULY in *Jones* v. *Jones*, 41 So. 373; Justice COOK in *St. P. F. & M. Ins. Co.* v. *McQuaid*, 75 So. 255.

II. We submit that a court will weigh parol evidence to reform a writing for mutual mistake "with great caution and distrust" when, in the language of Justice STORY, "circumstances have occurred in the intermediate time which give an intense importance to the asserted mistake," or in the language of Justice THAYER in *Travelers' Ins. Co.* v. *Henderson*, 69 Fed. 765 (C. C. A.), "an event has also occurred which renders a change in the terms of the contract of vital importance to the person who is seeking to reform the instrument."

III. We submit that a direct conflict in the evidence is conclusive against the reformation of an instrument for alleged mistake. *Litteral V. Bevins*, 217 S. W. (Ky.) 369; *Little* v. *Webster*, 1 N. Y. Supp. 315; *Mifflin County Nat'l Bank* v. *Thompson*, 22 Atl. (Pa.) 714; *Pope* v. *Hoopes*, 90 Fed. (C. C. A.) 451; *Desmoines Co. Agr. So.* v. *Tubbessing*, 54 N. W. (Iowa) 68; *Coleman* v. *Ill. Life Ins. Co.*, 82 S. W. (Ky.) 616; *Heffron* v. *Fogel*, 82 Pac. (Wash.) 1003; *Bobb* v. *Bobb*, 4 S. W. (Mo.) 514; *Fitschen* v. *Thomas*, 22 Pac. (Mont.) 453; *Stein* v. *Phillips*, 84 Pac. (Ore.) 793; *Webb* v. *Mose*, 49 S. W. (Ark.) 1081; *Wells* v. *Ogden*, 30 Wisc. 637.

IV. We submit that the alleged intention to which a complainant desires an instrument to be made to conform must be shown to have "continued concurrently in the minds of all parties down to the time of its execution." *Roberts* v. *Derby*, 23 N. Y. Supp. 34; *Dawson* v. *Graham*, 41 Upper Canada Q. B. 532; citing Kerr on Frauds, 350; *Stockbridge Iron Co.* v. *Hudson Iron Co.*, 107 Mass. 290, 317; *Nebraska Loan & T. Co.* v. *Ignowski*, 74 N. W. 852; *Ramsey* v. *Smith*, 32 N. J. Eq. 28; *So. F. & W. Co.* v. *Ozment*, 44 S. E. 681; *Hearne* v. *M. Life Ins. Co.*, 20 Wall (U. S.) 483.

V. We submit that a lapse of thirty-six years between the date of the execution of the instrument and the date of the attack on it, accompanied by the death of all parties to it but one, is fatal to a prayer for reformation, especially where the deceased parties to it lived many years after its execution, had copies of the writing in their possession, and made no complaints as to its terms. *Keedy* v. *Hally*, 63 Md. 311; *Stiles* v. *Willis*, 8 Atl. (Md.) 353; *Bobb* v. *Bobb*, 4 S. W. (Mo.) 511; *Davidson* v. *Mayhew*, 68 S. W. (Mo.) 1031; *Fitschen* v. *Thomas* 22 Pac. (Mont.) 450; *Yocum* v. *Foreman*, 14 Bush (Ky.) 494; *Travelers' Ins. Co.* v. *Henderson*, 69 Fed. (C. C. A.) 762; *Paulison* v. *Van Iderstein*, 20 N. J. Eq. 594; *In re Hunter's Estate*, 23 Atl. 977; *Ferring* v. *Fleischman*, 39 S. W. (Tenn.) 19.

VI. We submit that evidence of the intention of one party is not admissible to reform a writing for mistake unless it is shown that it was so understood by the opposite party. *Bobb* v. *Bobb*, 7 Mo. App. 501; *Jack* v. *Naber*. 15 Iowa 450. This case should be affirmed.

Argued orally by *Tom Fite Paine*, for appellants, and *C. L. Garnett*, for appellee.

Holden, P. J., delivered the opinion of the court.

The suit is in chancery to reform a certain written instrument, and for the specific performance of same after

reformation, and for general and special relief. From a decree denying the relief sought and dismissing the bill, this appeal comes here.

The instrument sought to be reformed and enforced is in the following language:

"May 1, 1889.

"We, J. W. Manning, Wheeler Watson, H. D. Watson & Mrs. Tennie T. Owen agree to divide equally among ourselves any money that may come to the estate of our father, Asa Watson, and share equally any expense that is incurred in the collection of said money.

"J. W. MANNING.
"WHEELER WATSON.
"H. D. WATSON.
"TENNIE T. OWEN."

The appellee herein, Mrs. Tennessee Watson Owen, signed the instrument as Tennie T. Owen, and is the same person. The other three parties to the instrument are the deceased brothers and sisters of the appellee, and all are the children of Asa Watson, who died intestate in 1886. The appellee had a sister, Marcy L. Watson, living in New York, who was very wealthy. One of the daughters of the said Marcy L. Watson, namely Emily A. Watson, died in New York in 1924, and left an estate from which the appellee, Mrs. Tennessee Watson Owen, received one hundred twenty-six thousand, six hundred thirty-three dollars and seventy-five cents in settlement of her claim against the said estate; it being contended that the money was acquired as a kinsman, or as a descendant of the said Asa Watson, deceased, by virtue of relationship to Emily A. Watson, through appellee's father, Asa Watson.

When appellee received the above-named sum of money from the estate of Emily Watson, the appellants, who are the heirs at law of the other three parties who signed the instrument herein sought to be reformed, demanded that the appellee divide the money with them under the agreement evidenced by the instrument here involved; and, upon her refusal to make the division de-

manded, this suit was brought to reform the instrument and compel the specific performance thereof in the division of the amount received by the appellee from the estate of the said Emily A. Watson.

Oral testimony was offered at length by both sides for and against the reformation of the instrument. The appellants contended and offered testimony to show that the instrument did not express the mutual intent of the parties thereto, but that the real mutual intent of the parties at the time the instrument was executed was that all property or moneys of every kind and from every source that might come to either of the parties in the future should be shared equally between all, and that therefore the amount received by appellee from said Emily A. Watson ought to be divided equally between appellee and the appellants, heirs of the other three deceased parties to the instrument.

The appellee, on the hearing introduced evidence showing there was no mutual mistake, and that the instrument expressed the mutual intent of all of the signers thereto, and that the agreement evidenced by the writing was intended to cover only the proceeds which they at that time expected to recover from the United States Government on certain cotton claims, upon which there was a failure to finally realize; that it was not in the minds of any of the parties to divide any money or property that might come to them through any of their relatives in New York or elsewhere; that no such acquisition of money, which is the subject of this litigation, was thought of by the parties at the time the agreement was made between them. The record discloses that appellee received the money from the estate of the deceased New York relatives more than thirty-five years after the execution of the agreement, and that during this period of time no effort was made to reform this instrument here in controversy.

The bill filed by the appellants was one to reform the instrument, so as to express the mutual intent of the parties thereto, but appellants now contend that, if the

court should refuse to reform the instrument under the evidence in the case, then appellants are entitled to a division of the one hundred twenty-six thousand six hundred thirty-three dollars and seventy-five cents received by appellees under the prayer for general relief in the bill, because the money was acquired by appellee as a descendant of Asa Watson, and that, therefore, under the language of the written agreement, the money was acquired by, or through, the estate of Asa Watson as mentioned in the instrument.

On the first proposition as to whether the lower court erred in refusing to reform the instrument involved, we think the finding of the chancellor was abundantly supported by the evidence and we see no reason for disturbing his decision. The testimony is clear and convincing that the parties to the instrument only intended to divide equally among themselves any money that might come to the estate of their father by virtue of the claim against the United States for cotton seized after the Civil War upon which they hoped and expected to realize some money at a future date. The testimony in the case shows that the written agreement between the parties expressed the mutual intent of the parties, and did not intend to cover any money or property received from New York relatives thirty-five years after the execution of the agreement; that such an acquisition of money was not in the minds of the parties at the time of the agreement in 1889. The appellants failed to meet the burden of the proof required by law. This being true the refusal of the chancellor to reform the written instrument will not be disturbed upon this appeal.

A party who seeks to reform a written instrument has the burden of proving mutual mistake beyond a reasonable doubt. Parol testimony to reform must be received with "great caution and distrust." The burden of proof grows heavier upon the complainant by the lapse of time before seeking reformation. *Harrington* v. *Harrington*, 2 How. 701, 718; *Lauderdale* v. *Hallock*, 7 Smedes & M. 629; *Jones* v. *Jones*, 41 So. 373, 88 Miss.

784; *St. P. F. & M. Ins. Co.* v. *McQuaid,* 75 So. 255, 114 Miss. 430; *Travelers' Insurance Co.* v. *Henderson,* 69 F. 765, 16 C. C. A. 390; *Litteral* v. *Bevins,* 217 S. W. 369, 186 Ky. 514; *Little* v. *Webster,* 1 N. Y. S. 315, 48 Hun, 620; *Mifflin County Nat. Bank* v. *Thompson,* 22 A. 714, 144 Pa. 393; *Pope* v. *Hoopes,* 90 F. 451, 33 C. C. A. 595; *Des Moines County Agr. So.* v. *Tubessing,* 54 N. W. 68, 87 Iowa, 138; *Coleman* v. *Ill. Life Ins. Co.* (Ky.), 82 S. W. 616; *Heffron* v. *Fogel,* 82 P. 1003, 40 Wash. 698; *Bobb* v. *Bobb,* 4 S. W. 514, 89 Mo. 411; *Fitschen* v. *Thomas,* 22 P. 453, 9 Mont. 52; *Stein* v. *Phillips,* 84 P. 793, 47 Or. 545; *Webb* v. *Nease,* 49 S. W. 1081, 66 Ark. 155; *Wells* v. *Ogden,* 30 Wis. 637; *Roberts* v. *Derby,* 23 N. Y. S. 34, 68 Hun, 299; *Dawson* v. *Graham,* 41 Upper Canada Q. B. 532, citing Kerr on Frauds, 350; *Stockbridge Iron Co.* v. *Hudson Iron Co.,* 107 Mass. 290, 317; *Nebraska Loan & T. Co.* v. *Ignowski,* 74 N. W. 852, 54 Neb. 398; *Ramsey* v. *Smith,* 32 N. J. Eq. 28; *So. F. & W. Co.* v. *Ozment,* 44 S. E. 681, 132 N. C. 839; *Hearne* v. *Mutual Marine Ins. Co.* 20 Wall. 488, 22 L. Ed. 395; *Keedy* v. *Nally ,* 63 Md. 311; *Stiles* v. *Willis,* 8 A. 353, 66 Md. 552; *Bobb* v. *Bobb,* 4 S. W. 511, 89 Mo. 411; *Davidson* v. *Mayhew,* 68 S. W. 1031, 169 Mo. 258; *Fitschen* v. *Thomas,* 22 P. 450, 9 Mont. 52; *Yocum* v. *Foreman,* 14 Bush (Ky.) 494; *Travelers' Ins. Co.* v. *Henderson,* 69 F. 762, 16 C. C. A. 390; *Paulison* v. *Van Iderstine,* 29 N. J. Eq. 594; *In re Hunter's Estate,* 23 A. 973, 147 Pa. 549; *Ferring* v, *Fleischman,* (Tenn. Ch. App.), 39 S. W. 19; *Bobb* v. *Bobb,* 7 Mo. App. 501; *Jack v. Naber,* 15 Iowa, 450.

On the second contention, that appellants are entitled to a division of the money in question under the instrument as written, we are unable to bring ourselves in accord with this view, because the written agreement provides for the division of "any moneys that may come to the estate of our father, Asa Watson. Asa Watson died in 1886, and therefore was not living at the time of the death of Emily A. Watson, in 1924, it is not even shown that any part of the estate of Emily A. Watson would

have gone to Asa Watson if he had lived. Consequently the money here involved did not, and could not, "come to the estate of Asa Watson" as provided in the written instrument. This being the case, we think the claim of the appellants under the instrument as written is untenable, and must be denied.

There are other questions presented in the record, such as laches of appellants in attempting to reform the written instrument thirty-five years after its execution, and that the appellants received a small amount in settlement of their claim against the estate of the deceased, Emily A. Watson, and were thereby estopped, and that there was no consideration for the agreement, but we deem it unnecessary to pass upon these questions, because the lawsuit will be brought to an end by the determination of the two questions presented first above.

The decree of the lower court is affirmed.

*Affirmed.*